688 P.2d 642

**STATE of Arizona, Appellee,**

v.

**Edward Manuel CALDERA, Appellant.**

**No. 5988.**

Supreme Court of Arizona,
En Banc.

Oct. 1, 1984.

tys. Gen., Phoenix, and Timothy L. Moulton, Law Student, for appellee.

Ross P. Lee, Maricopa County Public Defender by Michael G. Sullivan and Terry J. Adams, Deputy Public Defenders, Phoenix, for appellant.

HAYS, Justice.

On April 27, 1983, appellant Edward Caldera was convicted of burglary in the first degree, three counts of aggravated assault and one count of misconduct involving weapons. At the time these offenses were committed, Caldera was on "mandatory release" from the Arizona Department of Corrections where he was serving a sentence for a conviction of burglary in the third degree. Appellant was found by the jury to have previously committed the prior offenses of armed robbery, grand theft, and burglary in the first degree.

Pursuant to A.R.S. § 13–604.01, the court sentenced Caldera to life on the burglary count, three life sentences for each of the three aggravated assault counts, and three and three-quarters years for the weapons count. The court designated that all five sentences were to run concurrently.

The issues on this direct appeal are three: (1) whether the trial court erred in failing to include instruction on lesser included offenses, (2) whether the appellant was improperly sentenced under A.R.S. § 13–604.01 and (3) whether the appellant was not properly credited with the time he served while awaiting trial. This case is before us as a direct appeal pursuant to Ariz. Const. art. 6, § 5 and A.R.S. § 13–4031.

In the early morning hours of January 1, 1983, at about 1:00 a.m., Eddie Contreras and Rudy Valdez left a New Year's Eve party at the home of Ernest Sevilla. As they stood on the front porch of the Sevilla home they heard shouting and saw three individuals on the lawn of a neighbor's home. The appellant and his brother were on the ground fighting. The wife of appellant's brother called for help when she saw Contreras and Valdez standing outside.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Crane McClennen, Asst. At-

As they approached, the fighting stopped; the appellant, who was on the ground, jumped to his feet and angrily told Valdez and Contreras to, "Get the fuck out of here."

Apparently the appellant had been involved in an argument with his sister-in-law. When the appellant grabbed her by the collar, his brother became angry and a fight ensued. His sister-in-law wanted to put a stop to the fight and consequently called to Contreras and Valdez for assistance.

During the conversation between the appellant, Contreras and Valdez, the appellant pushed Contreras. Contreras pushed him back. The appellant said, "You guys want to fuck with me? I got a gun." The appellant motioned with his hand to indicate he carried a gun. Valdez replied skeptically, "You don't have nothing." The appellant pushed Valdez and replied, "You want to find out?" Valdez pushed him back, at which point the appellant ran to a nearby house where he had been living. Contreras said to Valdez, "Let's go. If he's going to get a gun, we don't want to be here." The men walked back toward the Sevilla home accompanied by the appellant's sister-in-law, the woman who had originally called for their help.

Contreras, Valdez and the woman had not gotten very far when they saw the appellant emerge from his house carrying a weapon. The appellant ran toward them, intercepting his sister-in-law and Contreras on the steps of the Sevilla home. Appellant pointed a "sawed-off" .22-caliber semiautomatic rifle at Contreras and said, "I'm going to kill you. I'm going to shoot you.... Fuck with me now." Valdez, afraid for his friend Contreras, ran out from behind a car and pushed the appellant to disturb his aim. The appellant responded by using his rifle as a club and struck Valdez on the face with a force sufficient to break the stock of the rifle. Valdez needed eighteen stitches to close the face wound. Appellant returned his aim to Contreras.

For some reason, the appellant hesitated long enough for Contreras to grab Valdez and pull him toward the Sevilla home. Appellant's sister-in-law followed. The three rushed inside and Mary Sevilla helped Contreras force the door closed. Mary Sevilla was eight months pregnant at this time. The door had a large crystal windowpane. They could see the appellant outside threatening with his rifle and kicking at the door. The appellant shattered the glass and opened the door. Valdez, Sevilla, the appellant's sister-in-law, and Contreras retreated to the rear of the house. When the appellant entered, waving his rifle, Contreras, fearing that the appellant intended to kill them all, pushed the others into a rear bedroom. Appellant's sister-in-law called the police from the bedroom. When Contreras later looked out of the bedroom, the appellant had left. Shortly thereafter the police arrived. The next morning the appellant was arrested at his home.

Appellant first asserts that the jury should have been instructed on the lesser included offenses of simple assault and burglary in a lesser degree. The instructions given, argues the appellant, assumed as a matter of law that the weapon he used during the crime was deadly or dangerous. The evidence, according to the appellant, supports the view that the object he carried was an inoperable firearm and thus neither deadly nor dangerous within the meaning of A.R.S. § 13–105(7), (9) or (12). Appellant argues that this demands instruction on the unarmed lesser included offenses and failure to so instruct was reversible error.

■ The test for when lesser included instructions must be given is well settled. There must be some evidence upon which a jury could convict the appellant of the lesser included offense. *State v. Schroeder*, 95 Ariz. 255, 389 P.2d 255 (1964). This means essentially two things. First, the jury must be able to find that the state failed to prove some element of the greater offense. Second, the record must contain evidence which supports a conviction of the

lesser included offenses. *State v. Schroeder, supra.* Where an appellant utilizes an alibi defense, as here, there is usually little evidence on the record to support an instruction on the lesser included offenses. *State v. Schroeder, supra.* This is because the appellant produces evidence that he simply did not commit the offense and the state produces evidence that he committed the offense as charged. Thus, the basic rule is that the instruction must be supported by some theory of the case and substantiated by the evidence. Giving too many instructions can mislead a jury. *State v. Baker*, 126 Ariz. 531, 617 P.2d 39 (App.1980).

There remains the possibility, of course, that the jury might simply disbelieve the state's evidence on one element of the crime. If so, it is argued, conviction of a lesser offense is still possible. This reasoning, however, would require instructions on all offenses theoretically included in every criminal information. The law does not require or even permit such a procedure. (Citations omitted) *State v. Schroeder*, 95 Ariz. at 259, 389 P.2d at 258 (1964).

■ Appellant's theory in the court below was alibi. He maintained that he was with his brother at a party during the time the crime was committed. The state, on the other hand, introduced the weapon that three witnesses said the appellant carried, introduced evidence that the weapon was of a type prohibited by statute, and allowed the jury to examine it. There was no evidence presented to the jury that the firearm was in a permanently inoperable condition at the time of the crime. *Cf. State v. Spratt*, 126 Ariz. 184, 613 P.2d 848 (App. 1980). The only suggestion of this possibility occurred in chambers during the time when the instructions were being decided. Clearly, there was no evidence adduced at trial by which the jury could convict the appellant of the unarmed lesser included offenses.

■ Appellant further asserts that the determination of whether or not an object is a deadly or dangerous weapon is a jury question. With this proposition we are in accord. *Cf. State v. Bustamonte*, 122 Ariz. 105, 593 P.2d 659 (1979).

■ In the case at bar, we find the appellant had the benefit of such a determination. Among the instructions given during the trial were the definitions of "dangerous instrument," "deadly weapon," and "firearm." The jury could have concluded that the appellant was not so armed, had they done so, they would have had to acquit. Rather, the jury, by convicting of the offenses charged, necessarily concluded that the appellant was armed. The instructions did not indicate that as a matter of law the instrument used during the crime was dangerous or deadly.

The second issue that appellant raises is that he was improperly sentenced under A.R.S. § 13–604.01(A). In this regard, appellant raises two contentions:

First, appellant contends that a jury must make a finding of dangerousness prior to conviction under the sentence enhancement provisions of A.R.S. § 13–604.-01. In this vein, appellant argues that the trial court erred because it did not submit this question to the jury. We find that the question of dangerousness was submitted to the jury and the trial court did not err.

Under A.R.S. § 13–604.01, the jury must find dangerousness before conviction. The quality of this dangerousness is specified by the statute. The jury must find that the felony for which the appellant now stands convicted involved the "... use or exhibition of a deadly weapon or dangerous instrument or involving the intentional or knowing infliction of serious physical injury upon another." A.R.S. § 13–604.01(A).

■ We note that the issue of jury-determined dangerousness, has already arisen in the context of companion statute A.R.S. § 13–604. *State v. Barrett*, 132 Ariz. 88, 644 P.2d 242 (1982). We find the reasoning there persuasive. We believe that the determination of dangerousness can be made in at least two ways. *State v. Grilz*, 136 Ariz. 450, 666 P.2d 1059 (1983). The preferable way would be to directly submit to

the jury the issue of dangerousness via verdict forms. *State v. Barrett, supra.* Another way in which dangerousness can be determined is when it was a necessary element in the felony for which the appellant was originally convicted. *State v. Tresize,* 127 Ariz. 571, 623 P.2d 1 (1980).

█ In the case at bar, for example, the jury found the appellant guilty of armed burglary, three counts of aggravated assault, and one count of misconduct involving weapons. Each of these counts required the jury to consider whether the appellant exhibited a dangerous or deadly weapon. Thus, we hold that the issue of dangerousness, within the meaning of A.R.S. § 13–604.01(A), was submitted to the jury.

█ The second contention appellant raises is that the trial court improperly sentenced him under A.R.S. § 13–604.01 because his release status was not within the contemplation of the statute. We disagree.

At trial, evidence established that appellant was released on September 23, 1982. His release was designated "mandatory release" by the Arizona State parole officer that testified. Under this category of release, individuals are freed six months prior to the actual expiration of their sentences. For the duration of such sentences they remain under the control of the Arizona Department of Corrections. A.R.S. § 31–233(H). Appellant committed the crimes in this case on January 1, 1983, approximately three months and nine days after his release. Sentence enhancement pursuant to A.R.S. § 13–604.01 requires only that the appellant commit crimes "... while the person is on probation for convic-

tion of a felony offense, or parole, work furlough, *or any other release from confinement."* Thus, we are constrained to hold that appellant's release status was within the contemplation of this statute and enhanced sentencing was permissible.

█ The final issue appellant raises is that he was not properly credited with the time he served while awaiting trial. We agree. The record indicates Caldera spent 146 days in pretrial custody. In effect, the trial judge credited him with 37 days against counts I and II, 36 days against counts III and IV, and gave no credit against count V. The court designated all counts to run concurrently. In the case of concurrent sentences it is required to fully credit defendants with the total time spent awaiting trial in each separate count. *State v. Cruz-Mata,* 138 Ariz. 370, 674 P.2d 1368 (1983).

Pursuant to A.R.S. § 13–4037, we modify these sentences to credit appellant with 146 days against each of the five counts.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none. Accordingly, we affirm the judgments of conviction with modification of sentences as specified.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.