898 P.2d 954

STATE of Arizona, Appellee,

v.

Joseph Starling GREENE, Appellant.

· No. CR–93–0397–PR.

Supreme Court of Arizona,
En Banc.

June 22, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, John Pressley Todd, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

## OPINION

CORCORAN, Justice.

We must determine whether a single serious physical injury inflicted by appellant Joseph Starling Greene (defendant) during the commission of 4 separate and distinct offenses can enhance, based on dangerousness, all 4 of defendant's sentences. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and rule 31.19, Arizona Rules of Criminal Procedure.

## FACTUAL AND PROCEDURAL HISTORY

### I. Underlying Offense

At approximately 10:25 p.m. on December 31, 1985, the victim, a 19-year-old waitress, left the restaurant where she worked to walk home. During the one-mile walk to her apartment, she noticed a man following her. Defendant approached her as she was walking south along Dobson Road, a well-traveled north-south street in Mesa, Arizona, and wished her "Happy New Year's."

Defendant then grabbed the victim by her neck, hair, and arm, and dragged her away toward a grassy embankment. Defendant threatened to kill her if she screamed. While defendant was dragging the victim, he began battering her face by bringing her head into his fist. The victim stated that she believed defendant was trying to knock her unconscious because of the amount of force he was using. She remembers 3 or 4 hard blows to her face, but thinks she may have been unconscious during part of this time. She testified that she had "never experienced so much pain in [her] whole life," not even during childbirth. After defendant finished hitting the victim, he continued dragging her.

Defendant then threw her facedown in the dirt approximately 30 to 50 feet from where he first grabbed her.

By this time, the victim's face was bleeding very badly and her eyes were bloody. She thought she was going to die. Defendant ordered her to get up on her knees and began sexually assaulting her. He ripped the victim's pantyhose and underwear down to her ankles, scratching her in the process. He then sexually assaulted the victim by inserting his fingers "really roughly, harshly," into her vagina, hurting her "really bad."

The victim offered defendant money, but he said that he did not want her money; he "wanted a little piece for New Year's." After several unsuccessful attempts, defendant inserted his penis into the victim's vagina. During this portion of the assault, defendant roughly scratched her chest, back, and buttocks. The victim's face continued to bleed throughout the sexual assaults; investigators found two large pools of blood on the ground where the assaults occurred. Following the second sexual assault, while defendant was dressing, the victim heard a metal sound she thought might be a knife or gun and turned to look. Defendant kicked her "full force in the face" and told her not to look at him.

After again threatening that he would kill her if she turned him in, defendant fled. The victim removed her pantyhose and underwear and placed them on her face because it was bleeding so badly. A police officer traveling north on Dobson Road heard the victim scream and stopped to assist her. The officer testified that the victim had blood on her face, hair, and hands when she approached the police car, and that she continued to bleed inside the car. The victim testified that she had never seen so much blood. The officer took the victim to a nearby police station for immediate paramedic attention and then to the hospital.

The victim suffered an open nasal fracture. Hospital personnel initially thought she had been shot because the top part of her nose had separated at the bridge causing a quarter-inch hole. Her entire face was very swollen, and she had multiple bruises. She suffered particularly severe bruising and swelling below her left eye. The doctor who examined the victim stated that the injuries to her eye were consistent with someone punching or kicking her. She also had redness and scratches on her chest, buttocks, and back.

Her bruises and black eyes took 3 to 4 months to heal. The appearance of her nose was "completely changed"; she still has "lumps all down [her] nose," including what one physician described as "a sharp bump." She has two scars on her nose that she tries to hide with makeup. In addition, she suffered from sinus problems and had breathing difficulties for 3 months, and she continues to suffer from nosebleeds.

## II. Procedural History

Defendant was initially arrested for these offenses in 1986 and obtained a trial court order suppressing certain physical evidence. After an appeal by the state, this court set aside that suppression order in *State v. Greene*, 162 Ariz. 431, 784 P.2d 257 (1989). Defendant was tried and convicted of one count of aggravated assault, one count of kidnapping, and two counts of sexual assault. Over defendant's objection, the trial judge sent the question of dangerousness to the jury on all 4 counts. The jury found all offenses to be dangerous, as indicated by a special finding on each verdict.

The same jury later found that defendant had been previously convicted of felony theft; following an evidentiary hearing, the court found that defendant committed the aggravated assault, kidnapping, and sexual assault offenses while on probation for the prior felony theft conviction. Accordingly, pursuant to A.R.S. § 13-604.02(A), the trial judge sentenced defendant on each count to life imprisonment without eligibility for release on any basis for 25 years, except as authorized by A.R.S. § 31-233. The trial judge ordered the sentences for the two sexual assaults to run concurrently; he ordered that the other two sentences run consecutively to each other and to the sexual assault sentences.

Defendant appealed his convictions and sentences, and the court of appeals addressed the sentencing issues in a published

opinion.[1] The court of appeals held that the trial court properly found that a single "serious physical injury" rendered all 4 offenses "dangerous" for sentence enhancement purposes, and that the consecutive sentences did not constitute double punishment. *State v. Greene*, 177 Ariz. 218, 220–21, 866 P.2d 886, 888–89 (App.1993).

## ISSUES PRESENTED

1. Whether a single physical injury can enhance multiple sentences under A.R.S. § 13–604.02(A).

2. Whether *each* felony offense for which defendant was convicted—aggravated assault, kidnapping, and two sexual assaults—was involving:

   (a) the intentional or knowing infliction

   (b) of serious physical injury

   (c) upon another, and

   (d) was committed while defendant was on probation for a felony offense.

We find that a single physical injury can enhance multiple sentences, pursuant to A.R.S. § 13–604.02(A). We further find that defendant was convicted of two felony offenses, namely aggravated assault and kidnapping, involving the intentional or knowing infliction of serious physical injury upon another, and that defendant committed these offenses while on probation. Therefore, his sentences for aggravated assault and kidnapping were properly enhanced under this statute.

However, we find that the two sexual assault offenses were not felony offenses involving the intentional or knowing infliction of serious physical injury upon another, and therefore defendant's sentences for the sexu-

al assaults should not have been enhanced under § 13–604.02(A).

## DISCUSSION

Defendant argues that if the offenses are separate enough to permit consecutive sentences, then one injury cannot enhance the sentence of more than one offense. The state argues that the statute requires sentence enhancement for all offenses "involving" the serious injury.

The issue centers around the interpretation of A.R.S. § 13–604.02(A), 1985 Laws, Ch. 227, § 1, renumbered by 1985 Laws, Ch. 364, § 5, which provided in part:

> Notwithstanding any provision of law to the contrary, a person convicted of any felony offense *involving . . . the intentional or knowing infliction of serious physical injury* upon another if committed while the person is on probation for a conviction of a felony offense . . . shall be sentenced to life imprisonment and is not eligible for . . . release from confinement . . . until the person has served not less than twenty-five years.

(Emphasis added.) [2]

■ "Serious physical injury" was defined in A.R.S. § 13–105(31) to include

> physical injury which creates a reasonable risk of death, or which causes serious and permanent disfigurement, or serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb.[3]

The victim suffered "serious and permanent disfigurement" and "protracted impairment" of her face and nose. The record indicates that the appearance of the victim's nose was "completely changed" and that the victim

---

1. The court of appeals disposed of the other issues concerning defendant's convictions by separate memorandum decision.

2. The legislature has amended this statute several times since it was originally enacted in 1982. We have quoted the version of the statute effective when defendant committed the subject offenses in 1985. At the present time, the operative language in this case is the same regarding to whom the statute applies (to "a person convicted of any felony offense involving . . . the intentional or knowing infliction on another of

serious physical injury if committed while the person is on probation for a conviction of a felony offense"); however, the statute now provides that such a person "shall be sentenced to imprisonment for not less than the presumptive sentence," rather than life imprisonment. Laws 1994, Ch. 236, § 3; A.R.S. § 13–604.02(A).

3. This definition now appears at A.R.S. § 13–105(34), Laws 1994, Ch. 200, § 3, but the language remains the same.

continues to suffer from nosebleeds. Thus, the victim's face and nose injury falls within the definition of "serious physical injury" under § 13–105(31).

### A. Enhancing Multiple Offenses for a Single Injury

■ The first question we must decide is whether a single serious physical injury can ever enhance multiple sentences under § 13–604.02(A). We hold that the same single physical injury can enhance multiple sentences when each offense "involved" the injury.

This court has previously confirmed that an element of the underlying offense can also be used to trigger sentence enhancement. In *State v. Caldera,* we reasoned that:

> [T]he determination of dangerousness can be made in at least two ways. The preferable way would be to directly submit to the jury the issue of dangerousness via verdict forms. Another way in which dangerousness can be determined is when it was a necessary element in the felony for which the appellant was originally convicted.

141 Ariz. 634, 637–38, 688 P.2d 642, 645–46 (1984) (citations omitted). Likewise, in *State v. Smith,* we explained that because the jury had found the defendant guilty of armed robbery, "the jury must necessarily have found that the defendant committed a dangerous offense involving the use of a deadly weapon." 146 Ariz. 491, 499, 707 P.2d 289, 297 (1985).

The trial judge in this case reasoned that because the court was not precluded from using an element of the aggravated assault offense—serious physical injury—to apply dangerousness to that offense, the court should not be precluded from applying dangerousness to the other offenses as well. We agree.

■ Although the statute does not expressly state that a single act or injury may enhance more than one offense, the operation of the statute suggests this result. A single criminal offense for which the defendant was previously convicted could clearly enhance the defendant's sentence under § 13–604.02(A) for all crimes committed while on probation or parole for that single offense.

*See, e.g., State v. Green,* 174 Ariz. 586, 588, 852 P.2d 401, 403 (1993). The statute provides no basis for concluding that, although a single prior felony conviction can enhance multiple sentences, a single serious physical injury cannot.

■ We reject defendant's contention that application of the jury's finding of dangerousness to more than one offense violates A.R.S. § 13–116. The prohibition against double punishment in § 13–116 was not designed to cover sentence enhancement. *See State v. Rodriguez,* 126 Ariz. 104, 107, 612 P.2d 1067, 1070 (App.1980). Further, the legislature resolved the issue of whether any other statutory provisions prevent application of this sentencing enhancement provision by prefacing § 13–604.02(A) with the phrase "[n]otwithstanding any provision of law to the contrary." Accordingly, we hold that a single serious physical injury can enhance multiple sentences when the requirements of § 13–604.02(A) are met with respect to *each* offense.

### B. Application of the Statute to Each Offense

Because a single serious injury can enhance sentencing for more than one offense, we must also decide whether each felony offense for which defendant was convicted—aggravated assault, kidnapping, and two sexual assaults—was involving:

(a) the intentional or knowing infliction

(b) of serious physical injury

(c) upon another, and

(d) was committed while defendant was on probation for a felony offense.

The sentencing provisions of § 13–604.02(A) are triggered for each felony offense that meets all of the above requirements.

Criminal statutes are not strictly construed, but instead are "construed according to the fair meaning of their terms to promote justice and effect the objects of the law." A.R.S. § 13–104; *see also State v. Calderon,* 171 Ariz. 12, 14, 827 P.2d 473, 475 (App.1991).

One of the critical questions in applying § 13–604.02(A) is how the word "involving" should be construed. For purposes of the

statute, the definition must be confined within reasonable limits. The definitions of "involving" include "[t]o contain as a part; include ... to relate closely: connect ... to require as a necessary accompaniment: entail ... to have an effect on." *American Heritage Dictionary* 950 (3d ed. 1992); *Merriam–Webster's Collegiate Dictionary* 617 (10th ed. 1993).

▉ An offense is not "involving" a serious physical injury merely because the injury occurs at roughly the same time as the offense or increases the possibility the crime may occur. If the defendant inflicts the injury at the same time he commits the offense, then the offense is more likely to be "involving" the injury. It is not, however, a requirement that the injury occur simultaneously with the commission of the offense. The injury must be closely related to the offense, included as a necessary accompaniment to the offense, though not necessarily a statutory element of the offense, or have an effect on the offense. Where multiple offenses are at issue, as here, if the injury is much more closely related to one offense than another, then the injury may only properly enhance the sentence of the offense or offenses to which the injury is more closely related. This is not a bright line test. Whether an offense is "involving" a serious physical injury must be determined on a case-by-case basis using the factors we have listed here.

In addition to the word "involving," another critical question is how the further limiting and qualifying words "intentional or knowing infliction" are to be construed. These words more narrowly focus the applicability of the statute on felons who purposefully inflict injury during the commission of a particular offense. Under this statute, the legislature did not provide that the enhanced sentence apply to felony offenses that generally involved serious physical injury as a result of a defendant's criminal conduct. The legislature specifically focused the operation of the statute only on those felony offenses *involving intentional or knowing infliction of serious physical injury.* Each felony offense where the statute is sought to be applied must be analyzed to determine

whether the serious physical injury which resulted was inflicted by the defendant intentionally and knowingly during the commission of *that* felony offense.

Clearly, the legislature has not crafted § 13–604.02(A) simply as an umbrella to lump different crimes together during a course of criminal activity to enhance each sentence.

### 1. Aggravated Assault

▉ Because serious physical injury was a necessary element of defendant's aggravated assault conviction, the aggravated assault necessarily "involved" the injury for purposes of sentence enhancement under § 13–604.02(A).

Counsel for defendant conceded that the same element could be the basis for both the aggravated assault conviction and the finding of dangerousness for the aggravated assault. *See, e.g., Caldera,* 141 Ariz. at 638, 688 P.2d at 646. Defendant objects only to the finding of dangerousness for the kidnapping and sexual assault charges. The aggravated assault was involving the intentional or knowing infliction of serious physical injury upon another and was committed while defendant was on probation for a felony offense. Accordingly, the trial court properly sentenced defendant to life imprisonment for the aggravated assault offense.

### 2. Kidnapping

▉ "Serious physical injury" is not a necessary element of kidnapping. However, A.R.S. § 13–1304(A) defines kidnapping as the knowing restraint of another person with intent to commit one of several enumerated acts, including physical injury or sexual assault. Thus, a serious physical injury could provide both a means of restraining the victim and a basis for finding the necessary intent for kidnapping.

The question remains whether the injury and the kidnapping were sufficiently related in this case to find that the kidnapping offense was "involving" the serious physical injury within the meaning of § 13–604.02(A). We find that they were.

The victim's testimony indicates that the pounding of the victim's face occurred *during* the kidnapping, rather than before, as the court of appeals' opinion suggests. *Greene*, 177 Ariz. at 219, 866 P.2d at 887. The victim testified that defendant grabbed her, started dragging her toward the embankment, punched her, and then started dragging her again. Further, the injury did not just happen to occur simultaneously with an independent act of kidnapping. The record suggests that defendant purposefully inflicted the injury to disable the victim and carry out the kidnapping. He could have chosen to tie up the victim, but instead his method of "restraint" was to disable by severe physical abuse. The felony offense of kidnapping was involving the intentional or knowing infliction of serious physical injury upon another and was committed while defendant was on probation for a felony offense. Accordingly, we hold that the kidnapping sufficiently involved the injury to the victim's face and nose for purposes of enhancing defendant's sentence under § 13–604.02(A).

### 3. Sexual Assaults

■ As with kidnapping, "serious physical injury" is not a required element of sexual assault, but can nevertheless be related to the offense. In this case, however, the sexual assault offenses were not sufficiently related to the face and nose injury to "involve" serious physical injury under the meaning of § 13–604.02(A).

The record indicates that serious physical injury to the victim's face and nose was inflicted both before and after the sexual assaults: defendant caused the injury by punching the victim during the kidnapping while he dragged her away and by kicking her face after committing the second sexual assault. Nothing in the record suggests, however, that defendant intentionally or knowingly inflicted a serious physical injury to the victim during or in direct relation to the sexual assaults. We do not suggest that an injury must always occur *during* the commission of an offense to be related for purposes of sentence enhancement. We hold that in this case, where the injury occurred during the other offenses and was more closely related to those other offenses, the necessary statutory requirement of "involving" was not met.

Defendant committed kidnapping and aggravated assault to enable him to sexually assault the victim and to thwart identification. The serious physical injury was not closely related to the sexual assaults, was not a necessary accompaniment to the sexual assaults, and the injury did not have an effect on the sexual assaults. The sexual assaults were not felony offenses involving the intentional or knowing infliction of "serious physical injury" upon another, as that term (serious physical injury) is defined by statute.

Defendant committed sexual assault by "intentionally or knowingly engaging in sexual intercourse" with the victim without her consent. *See* A.R.S. § 13–1406(A). Defendant injured the victim when he committed the sexual assaults—all victims of sexual assault suffer both physical and emotional injuries as a result of an assault. However, any injury the victim suffered as a result of the acts defendant committed that were necessary to satisfy the elements of the crime of sexual assault was not so severe that it constituted a physical injury that created a risk of death, caused serious and permanent disfigurement, serious impairment of health, or loss or protracted impairment of the function of any bodily organ or limb. *See* A.R.S. § 13–105(31). In fact, in 1989 the legislature amended the sexual assault statute to include a discrete sentence enhancement provision similar to the statute at issue in this case. Now, if a defendant commits a sexual assault involving the intentional or knowing infliction of serious physical injury, and the defendant has a prior conviction for sexual assault, then the defendant shall be sentenced to life imprisonment. A.R.S. § 13–1406(C).

Nor can we say that the sexual assaults involved serious physical injury separate from the face and nose injury. The victim appears to have suffered only "serious physical injury" to her face and nose, under § 13–105(31). The pain, roughness, and scratching inflicted during the sexual assaults do not meet the statutory requirement of "reasonable risk of death," "serious and permanent disfigurement," "serious impairment of

health," or "loss or protracted impairment of the function of any bodily organ or limb." Accordingly, we hold that the trial court erred in sentencing defendant under § 13–604.02(A) for the sexual assault counts.

### C. Sentencing

Because defendant committed the present offenses while released from confinement, the sentences are governed by § 13–604.02, which takes priority over other sentencing provisions whenever a felony offense is committed while the defendant is on release from confinement for a prior offense. If dangerousness is involved, subsection (A) applies; if no dangerousness is involved, subsection (B) applies.

Because this court has determined that the sexual assault offenses did not involve dangerousness for purposes of sentence enhancement under § 13–604.02(A), defendant should be resentenced for those offenses under § 13–604.02(B) instead. The sentence for non-dangerous felony offenses committed while on probation is "a term of not less than the presumptive sentence authorized for the offense."

### D. Justice Martone's Dissent

The dissent warrants a brief mention. Justice Martone states that under our definition of "involving," the sexual assaults were involving a serious physical injury, and therefore defendant's sentences should be enhanced for those convictions. The serious physical injury is closely related to the kidnapping and aggravated assault, but not to the sexual assaults.

We state that defendant purposefully inflicted the injury to disable the victim and carry out the kidnapping. Justice Martone suggests that the same can be said of the sexual assaults. 182 Ariz. 576, 584, 898 P.2d 954, 962 (1995) (Martone, J., dissenting). But kidnapping is committed by "knowingly restraining another person." A.R.S. § 13–1304. The manner in which defendant restrained the victim here was to punch her in the face, which, in part, caused the serious physical injury. The sexual assaults, on the other hand, were committed by defendant "intentionally or knowingly engaging in sexu-

al intercourse" with the victim without her consent. A.R.S. § 13–1406. The victim was not seriously physically injured, as that term is defined by statute, by the sexual assaults. She was seriously physically injured by the punches and kicks defendant inflicted in connection with the kidnapping and aggravated assault. Justice Martone asks, "[W]hy does the court not reach the conclusion that these sexual assaults involved serious physical injury?" 182 Ariz. at 584, 898 P.2d at 962 (Martone, J., dissenting). The answer is that during the commission of the sexual assaults, there was no intentional infliction of serious physical injury, as required by the statute.

Justice Martone suggests that we have improperly injected a "during" element in our interpretation of the "involving" language. 182 Ariz. at 585, 898 P.2d at 963 (Martone, J., dissenting). The term "involving" is general, and, consequently, our definition of "involving" is as well. Whether the injury was inflicted "during" the commission of the offense is a factor weighing heavily in favor of finding that the offense was "involving" the injury. We have delineated factors for the trial court to consider when making this determination. No one factor is determinative.

Furthermore, we are not dealing with just a definition of "involving," but also of "intentional or knowing infliction." "Intentional or knowing infliction" applies to each discrete offense and requires that the trial court determine that the defendant committed an offense involving a serious physical injury *and* that the defendant inflicted the injury intentionally or knowingly. Section 13–604.02(A) does not provide for the lumping together of all offenses charged and applying only the "involving" definition.

### DISPOSITION

Because the serious physical injury was directly involved with both the kidnapping and aggravated assault offenses, the trial court properly enhanced defendant's sentences for both of those offenses under § 13–604.02(A), 1985 Laws, Ch. 227, § 1, renumbered by 1985 Laws, Ch. 364, § 5. Accord-

ingly, we affirm defendant's consecutive sentences for those two offenses.

We are not convinced under these facts, however, that the injury was sufficiently related to the sexual assaults to enhance those sentences as well. We therefore reverse and remand for resentencing on those two counts, pursuant to § 13–604.02(B), 1985 Laws, Ch. 227, § 1, renumbered by 1985 Laws, Ch. 364, § 5, and we vacate Part 1 of the court of appeals' opinion addressing "Sentencing for 'dangerous offenses.'"

FELDMAN, C.J., and MOELLER, V.C.J., concur.

MARTONE, Justice, dissenting in part.

This is a rape case. Everything the defendant did before, during, and after the rape "involved" the rape. The aggravated assault and kidnapping offenses were simply ancillary to rape. They were the means by which the rape could be committed. I thus disagree with the court that the sexual assaults here did not "involve" serious physical injury.[1]

There is no dispute in this case that there was intentional infliction of serious physical injury. The only question is whether or not the sexual assaults here "involved" that intentional infliction of serious physical injury. The court defines "involving" to mean "closely related to the offense, included as a necessary accompaniment to the offense, though not necessarily a statutory element of the offense, or have an effect on the offense." *Ante*, at 581, 898 P.2d at 959.

Applying this definition to the sexual assault offenses leads to the inescapable conclusion that these sexual assaults meet the "involving" test. The defendant battered the victim's face to subdue and rape her. Thus this serious physical injury was intentionally inflicted as a direct means of preparing for the sexual assault. While the victim was dressing, the defendant kicked her in the face "and told her not to look at him" as a direct means of covering up the offense. *Ante*, at 578, 898 P.2d at 956. Unless he

punched and kicked her at the moment of penetration, how more closely related could these injuries be? But that is not "closely related." That is "part of," something the statute does not require, and something the court says it does not require. The court tries to limit the meaning of "closely related" to "more closely related." *Ante*, at 581, 898 P.2d at 959. But the statute does not say "more involving," it just says "involving." Indeed, if the test is "more closely related," how does the statute reach the kidnapping offense here? The serious physical injury was "more closely related" to the aggravated assault, not the kidnapping. It is hard to imagine how more "closely related" an intentional serious physical injury must be in order to satisfy the "involving" test.

Nor do I understand how the court can maintain that the serious physical injury did not "have an effect on" the sexual assault. The injuries inflicted took away the victim's physical and mental ability to resist. The injuries allowed defendant to more easily rape his victim repeatedly. The injuries plainly "had an effect on" the sexual assault. To say otherwise will be shocking news to the victim.

The court agrees that "defendant purposefully inflicted the injury to disable the victim and carry out the kidnapping." *Ante*, at 582, 898 P.2d at 960. But the same must be said for the sexual assaults. Adopting the court's own analysis, and substituting the words "sexual assaults" for the word "kidnapping," we have as follows: "defendant purposefully inflicted the injury to disable the victim and carry out the [sexual assaults]." *Id.* It is no answer to say that the serious physical injury was simply the mode of "restraint" chosen by defendant. The court concedes that "involving" need not mean that serious physical injury is an element of the offense. If the kidnapping satisfies the "involving" test, then so too do the sexual assaults.

Then why does the court not reach the conclusion that these sexual assaults involved serious physical injury? The court says that

---

1. I agree with the court that a single physical injury can apply to multiple offenses under A.R.S. § 13–604.02(A), and that the "involving" requirement was met for both the aggravated assault and the kidnapping.

the defendant caused serious physical injury "during the kidnapping," but not "during" the sexual assaults. *Ante*, at 582, 898 P.2d at 960. Yet the court then says that it does "not suggest that an injury must always occur *during* the commission of an offense to be related for purposes of sentence enhancement." *Id.* But then the court says the answer to my question "is that *during* the commission of the sexual assaults, there was no intentional infliction of serious physical injury, as required by the statute." *Ante*, at 583, 898 P.2d at 961 (emphasis added). But the statute requires no such thing. "During" is not a word used by the statute. "During" is not even a word used in the court's "delineated factors for the trial court to consider." *Ante*, at 583, 898 P.2d at 961.

While claiming to define the word "involving," the court really requires that "[e]ach felony offense where the statute is sought to be applied must be analyzed to determine whether the serious physical injury which resulted was inflicted by the defendant intentionally and knowingly *during* the commission of *that* felony offense." *Ante*, at 581, 898 P.2d at 959 (first emphasis added). Thus, under the court's application of its own test, the words "closely related to," "have an effect on" and even "involving" are superfluous.

From where does this "during" element come? The court appears to find it in the words "intentionally or knowingly," saying that those words "more narrowly focus the applicability of the statute on felons who purposefully inflict injury *during* the commission of a particular offense." *Ante*, at 581, 898 P.2d at 959 (emphasis added). But "intentionally" and "knowingly" refer to state of mind, not timing. These words exclude from the application of the statute injuries inflicted "recklessly" or "negligently." Clearly, defendant intentionally or knowingly beat up the victim. "Involving" is the only word of timing in the statute. "Involving" plus "intentionally or knowingly" does not equal "during."

In the end, the court defines "involving" to mean "during," though it claims not to. Yet even that test is met here. This offense was fundamentally a rape from the beginning to the end. Sexual assault requires lack of consent. One way to overcome the victim's lack of consent is to use force. The defendant's intent all along was "a little piece for New Year's," *ante*, at 578, 898 P.2d at 956, and he intended to force the victim to give it to him. In using force to overcome lack of consent, defendant inflicted serious physical injury. An element of rape, lack of consent, was present before penetration and the rape itself began before the actual sexual contact. The serious physical injury was the first part of the rape, and was inflicted "during" the rape. What if a policeman intervened before penetration. Would not the facts here have justified a charge of attempted rape? How can facts that would justify a charge of attempted rape not be "closely related" enough to the rape?

The legislature did not intend to chart physical violence in nanoseconds. The "involving" test is as simple as this. Suppose two people discuss this rape the day after. One says "a woman was raped yesterday." The other responds, "was she hurt badly?" If the answer, as here, is "yes", the "involving" test is met. I respectfully dissent.

ZLAKET, Justice, dissenting in part.

I agree with Justice Martone. Given the details of this brutal attack, the majority's attempts to divorce the sexual assaults from the serious physical injuries suffered by this victim require an uncomfortable stretch that I am unwilling to make. In all other respects, I concur in the court's opinion.