OPINION
LANKFORD, Judge.
¶ 1 Defendant Everett Gatliff (Defendant) appeals from his convictions and sentences *353 for arson of an occupied structure and criminal damage. The only issue on appeal is whether a jury verdict for arson of an occupied structure necessarily includes a finding of dangerousness that permits an aggravated sentence, eliminating the need for a separate finding of dangerousness. We have jurisdiction pursuant to Arizona Constitution Article 6, Section 9 and A.R.S. §§ 12-120.21(A)(1) (2003), 13-4031 (2001), and 13-4033(A) (2001). We affirm the conviction and sentence.
¶ 2 The facts viewed in the light most favorable to sustaining the verdict are as follows. See State v. Greene, 192 Ariz. 431, 437, ¶ 12, 967 P.2d 106, 111-12 (1998). Defendant and his three siblings inherited an equal interest in their parents’ home. He resided in the home both before and after his parents’ deaths. Defendant’s parents had made payments toward the mortgage on the home. However, after his parents died, Defendant did not pay the mortgage. Eventually, the mortgage company initiated foreclosure proceedings.
¶ 3 Defendant’s sister, Debra McKee (Sister), testified that she had become concerned about the condition of her parents’ home while under Defendant’s care. She saw new damage to the home at each visit. When confronted with the deteriorating condition of the home, Defendant told Sister that he had not caused the damage or blamed it on his temper. Sister testified that Defendant said the home should be burned down. Prior to the parents’ deaths, but after Defendant indicated he would burn the home with himself inside, Sister purchased and installed smoke detectors in the home. Defendant removed the smoke detectors. Sister testified that when asked about the removal of the smoke detectors, Defendant replied that it did not matter because he intended to burn down the home.
¶ 4 On June 26, 2002, a fire was reported at the Gatliff home. Just minutes before the report, a Hualapai Valley Fire Department ambulance had departed from the residence adjacent to Defendant’s home. The Department received the report at 3:20 p.m. and immediately returned to the area to subdue the fire. By 3:40 p.m., the fire was under control.
¶ 5 At the time of the fire, there were mobile homes on both sides of the Gatliff home. Fire Marshal James Dykens testified that while the amount of damage was contained in a relatively small area, the radiated heat and winds could have been a danger to neighboring homes. Dykens testified that the fire began in the south bedroom. Dyk-ens determined the fire was likely a “quick fire” consistent with the use of an accelerant, not a “smoldering fire” such as that caused by the mishandling of a cigarette. Dykens thought the fire was intentionally set, not accidental, and probably caused by a match or lighter and a flammable liquid. However, Defendant’s expert, David Smith, testified that because of incomplete scientific testing, the cause of the fire should have been deemed “undetermined,” but the most likely cause was a discarded cigarette.
¶ 6 When interviewed by Sheriffs detectives about a week after the fire, Defendant initially denied being at home at the time of the fire, but admitted he had been at home when the ambulance was next door. Defendant told Sheriffs detectives that cigarettes could have started the fire. Further investigation revealed that the clothing Defendant wore the day of the fire tested positive for hydrocarbons and his pants had a burn hole in them.
¶ 7 At the close of trial, the State requested that a special verdict be given to resolve the dangerousness allegation. Instead, the court determined that dangerousness was inherent in the offense of arson of an occupied structure and therefore that a guilty verdict would necessarily imply a finding of dangerousness.[1] Defendant did not object to the *354 court’s ruling.[2]
¶ 8 The jury found Defendant guilty of the crimes of arson of an occupied structure and criminal damage. Defendant was sentenced to concurrent sentences of seven years of imprisonment for arson of an occupied structure[3] and two years of imprisonment for criminal damage. Defendant timely appeals.
¶ 9 Defendant’s sole issue on appeal is the propriety of the court’s finding that the jury verdict for arson of an occupied structure necessarily included a finding of dangerousness. However, Defendant’s counsel declined to object to the court’s ruling and did not request a separate jury finding, “failure to raise an issue at trial, including failure to request a jury instruction, waives the right to raise the issue on appeal.” State v. Gendron, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991) (citations omitted); see also Ariz. R.Crim. P. 21.3(c). Failure to preserve an issue for review limits us to a fundamental error analysis. Gendron, 168 Ariz. at 154, 812 P.2d at 627. A sentence longer than that authorized by law is fundamental error. See State v. Alvarez, 205 Ariz. 110, 116, ¶ 18, 67 P.3d 706, 712 (App.2003); State v. Brown, 191 Ariz. 102, 104, 952 P.2d 746, 748 (App.1997). However, we need not analyze for fundamental error because we find no error occurred.
¶ 10 The sentence is initially suspect because it exceeds the presumptive sentence for arson and the jury made no specific finding of dangerousness. “Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Blakely, 124 S.Ct. at 2536 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). “Our precedents make clear ... the ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” Id. at 2537 (citations omitted). In Arizona, the maximum penalty based on the verdict alone is the presumptive sentence. See State v. Brown, 209 Ariz. 200, 203, ¶ 12, 99 P.3d 15, 18 (2004); Aragon v. Wilkinson, 209 Ariz. 61, 66, ¶ 14, 97 P.3d 886, 891 (App.2004).
¶ 11 Defendant was sentenced to a term of imprisonment greater than the presumptive based on the dangerous nature of the offense. The sentencing range for a defendant with no prior felony convictions, convicted of arson of an occupied structure, is a minimum of four years, a presumptive of five years, and a maximum of ten years. See A.R.S. §§ 13-701 (2001), -702 (Supp.2004). A finding of dangerousness increases the presumptive term to ten and one-half years, with a minimum sentence of seven years and a maximum of twenty-one years.[4] A.R.S. § 13-604(1), (P) (Supp.2004).
¶ 12 If, however, the jury necessarily decided that the crime was dangerous by convicting Defendant of arson, then the jury need not have found dangerousness separately. In the words of Blakely, the fact of dangerousness would be “reflected in the jury verdict.” Blakely, 124 S.Ct. at 2537. We must therefore determine whether or not “dangerousness” is inherent in a conviction for arson of an occupied structure.
*355 ¶ 13 To determine whether dangerousness is inherent, we turn to the statutes that define the offense and define dangerousness. An offense is punishable as dangerous if it “involv[es] discharge, use or threatening exhibition of a deadly weapon or dangerous instrument.” A.R.S. § 13-604(1). As defined in A.R.S. § 13-105(11) (2001), a dangerous instrument is measured by “the circumstances in which it is used” and whether, under those circumstances, it is “readily capable of causing death or serious physical injury.” So the correct question is whether fire when used to commit arson is a dangerous instrument.
¶ 14 A.R.S. § 13-1704 (2001) delineates the elements of the crime of arson of an occupied structure. The statute states:
A. A person commits arson of an occupied structure by knowingly and unlawfully damaging an occupied structure by knowingly causing a fire or explosion.
B. Arson of an occupied structure is a class 2 felony.
Additionally, A.R.S. § 13-1701(2) (2001) defines an “occupied structure” as “any structure ... in which one or more human beings either is or is likely to be present or so near as to be in equivalent danger at the time the fire or explosion occurs.”[5] Fire, however, is not always dangerous. It can be safe and even beneficial when used for purposes such as cooking.
¶ 15 It is axiomatic that, in the context of arson of an occupied structure, fire is a dangerous instrument. It is the very means by which the crime is committed.[6] In two prior cases, our courts have upheld jury findings of dangerousness in arson cases based on the use of fire as a dangerous instrument. In State v. Wilson, 135 Ariz. 395, 661 P.2d 659 (App.1983) we held that fire falls within the statutory definition of “dangerous instrument.” See also State v. Ortiz, 131 Ariz. 195, 198 n. 1, 639 P.2d 1020, 1023 n. 1 (1981) disapproved of on other grounds by State v. Gretzler, 135 Ariz. 42, 659 P.2d 1 (1983) (“The jury also found that these crimes involved the use or exhibition of fire, a dangerous instrument under A.R.S. § 13-604”).
¶ 16 Our prior decisions confirm that fire can be a dangerous instrument, but is it always a dangerous instrument when the crime is arson? The distinguishing aspect of a dangerous instrument is that it must, under the circumstances, be “readily capable” of causing serious injury. A.R.S. § 13-105(11). That is always true in arson of an occupied structure. A.R.S. § 13-105(11) defines a “dangerous instrument” as “anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury.”
¶ 17 A separate jury finding of dangerousness is not required. The conviction for arson of an occupied structure includes a finding of dangerousness. The use of a dangerous instrument is an element of the arson offense. Our supreme court has approved of a similar implied finding of dangerousness. For example, in State v. Smith, 146 Ariz. 491, 498-99, 707 P.2d 289, 296-97 (1985) the court determined that a guilty verdict for armed robbery necessarily includes a jury finding that the offense was dangerous because armed robbery can only be committed when one uses a “deadly weapon” or “dangerous instrument.” “Thus, no specific finding of dangerousness is required where an element of the offense charged requires proof of the dangerous nature of the felony.” Id. at 499, 707 P.2d at 297 (citation omitted). See also State v. Greene, 182 Ariz. 576, 580, 898 P.2d 954, 958 (1995) (citing Smith, 146 Ariz. 491, 707 P.2d 289 and State v. Caldera, 141 Ariz. 634, 637-38, 688 P.2d 642, 645-46 (1984)) *356 (holding that dangerousness can be found when it was a necessary element in the felony for which the defendant was convicted).
¶ 18 Because the use of “fire,” a “dangerous instrument,” is an essential element of the crime of arson of an occupied structure, dangerousness is by definition inherent in the crime. One cannot commit arson of an occupied structure without using fire as a dangerous instrument. An “occupied structure” is one in which a person is at risk of serious injury by fire, and a dangerous instrument is one capable of causing such injury. The jury conviction of arson of an occupied structure represented a finding that Defendant committed a dangerous offense. Accordingly, Defendant was properly sentenced to the greater term of imprisonment.
¶ 19 For the foregoing reasons we affirm Defendant’s convictions and sentences.
CONCURRING: JOHN C. GEMMILL and PATRICK IRVINE, Judges.

l.
THE STATE: I should have brought this up earlier. But there should be a special verdict on the arson because it’s charged as a dangerous offense. 604 is in the indictment.
THE COURT: You know, I thought about that. And in my view, it’s like aggravated assault with a dangerous instrument, where if there is no way to find a nondangerous arson, as far as I’m concerned, it’s alleged in the indictment, that to find guilty necessarily makes it dangerous. That’s the way I’ve been treating it.

.
THE COURT: ... Mr. Dickey, do you want to make any record on that?
DEFENSE COUNSEL: No, Your Honor.

. We have considered the effect of Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) on this matter and conclude Harris does not apply to these facts.
Harris approves increasing a mandatory minimum sentence based on a fact not found by a jury, but only if the new minimum does not exceed the "statutory maximum,” which for these purposes is the presumptive sentence without a finding of dangerousness. See Blakely v. Washington, — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). A dangerousness finding increases the punishment beyond the presumptive sentence absent that finding. Accordingly, we analyze the sentence for possible Blakely error.

. A.R.S. § 13-702(C)(2) (Supp.2004) is not implicated by the sentence. That statute only prohibits the court from "double counting” an essential element of the offense of conviction as an aggravating factor for purposes of sentencing. It does not, however, prevent considering an element of the offense for purposes of sentence enhancement.

. Arson of an occupied structure is the most serious of the five arson offenses. The crimes are reckless burning (A.R.S. § 13-1702), arson of a structure (A.R.S. § 13-1703 (2001)), arson of an occupied structure (A.R.S. § 13-1704), arson of an occupied jail or prison facility (A.R.S. § 13-1705 (2001)), and burning of wildlands (A.R.S. § 13-1706 (Supp.2004)).

. It is possible to have an arson without the use of fire, because A.R.S. § 13-1704 provides that arson of an occupied structure may be committed by the use of explosives. However, arson of an occupied structure, whether committed by fire or explosion, still inherently involves a dangerous instrument.