IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

OCT 16 2013

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,        )
                             )
               Appellee/     )        2 CA-CR 2012-0156
          Cross-Appellant,   )        DEPARTMENT A
                             )
     v.                      )        O P I N I O N
                             )
GEORGE BENJAMIN LARIN,       )
                             )
               Appellant/    )
          Cross-Appellee.    )
                             )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20111979001

Honorable Javier Chon-Lopez, Judge

AFFIRMED IN PART; VACATED AND REMANDED IN PART

Thomas C. Horne, Arizona Attorney General
  By Joseph T. Maziarz and Nicholas Klingerman                    Tucson
                                                     Attorneys for Appellee/
                                                         Cross-Appellant

Emily Danies                                                      Tucson
                                                     Attorney for Appellant/
                                                         Cross-Appellee

V Á S Q U E Z, Presiding Judge.

¶1         Following a jury trial, George Larin was convicted of one count each of first-degree burglary, armed robbery, and aggravated robbery and two counts of kidnapping.  The trial court sentenced him to concurrent terms of imprisonment, the longest of which was eighteen years.  On appeal, Larin argues the court erred by refusing to give his requested jury instructions for lesser-included offenses, denying his motion for a mistrial on the ground that the state sought to elicit an inadmissible in-court identification, and denying his motion for a new trial.  The state cross-appeals, arguing the court erred by not allowing the jury to consider dangerous-nature sentencing allegations during the aggravation phase of trial.  For the reasons that follow, we affirm Larin's convictions but vacate his sentences and remand for proceedings consistent with this opinion.

## Factual and Procedural Background

¶2         We view the facts in the light most favorable to upholding Larin's convictions.  *See State v. Molina*, 211 Ariz. 130, ¶ 2, 118 P.3d 1094, 1096 (App. 2005).  On June 2, 2011, around 5:30 p.m., A.A. was at his home in Tucson working on a vehicle in his garage when he saw three masked men in a white car drive by in the alley.  A.A. closed his garage door and called his neighbor to notify him of what he had seen.  The neighbor's wife eventually called the police.

¶3         Meanwhile, a few houses away, J.W. was leaving his friend A.V.'s house where he had purchased heroin.  J.W. left through the back door, and, as soon as he got into his vehicle, a masked man later identified as Alonzo Rada, who had been hiding in the back seat, pointed a gun at him.  J.W. and Rada soon were joined by two other men,

2

both of whom were wearing masks and holding handguns. The two men later were identified as Anthony Torre and Larin.

¶4 The three men walked J.W. at gunpoint to the rear of A.V.'s house and directed him to knock on the back door. When A.V. opened the door, Larin and the others forced their way in at gunpoint. A.V.'s wife, S.B., and the children were led into one of the bedrooms where they remained for the duration of the incident. A.V. and J.W. were told to "go into the living room and sit on the couch [with their] hands on [their] heads." A.V., who understood that he "was being robbed," told the men where the heroin was located. While Larin and Rada searched for the heroin, Torre held A.V. and J.W. at gunpoint. After finding the heroin, Larin and Rada began collecting other items, including cash, a gun, televisions, and game consoles. The three men then decided to leave. Torre left through the back door but returned immediately after he saw police officers outside. After telling Larin and Rada about the officers, Torre left through the front door and officers immediately apprehended him. Larin and Rada then got rid of their guns, took off their masks, and, as they attempted to leave through the back door, were arrested.

¶5 Larin was charged by indictment with one count each of first-degree burglary, armed robbery, aggravated robbery, and possession of a deadly weapon by a prohibited possessor and two counts each of aggravated assault with a deadly weapon or dangerous instrument and kidnapping. The state also alleged dangerous-nature sentence enhancements for each count of first-degree burglary, armed robbery, aggravated robbery, aggravated assault, and kidnapping. The jury found Larin guilty of first-degree

3

burglary, armed robbery, aggravated robbery, and both counts of kidnapping and acquitted him of the remaining counts. He was sentenced as described above. Larin's appeal and the state's cross-appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4032, and 13-4033(A)(1).

## Discussion

### Lesser-Included Offenses

¶6　　　　Larin contends the trial court erred in refusing to give his requested jury instructions on lesser-included offenses and denying his motion for a new trial on the same ground. We review a trial court's denial of a requested instruction for an abuse of discretion, *State v. Musgrove*, 223 Ariz. 164, ¶ 5, 221 P.3d 43, 46 (App. 2009), and will not reverse absent a clear abuse of that discretion and resulting prejudice, *State v. Garfield*, 208 Ariz. 275, ¶ 11, 92 P.3d 905, 908 (App. 2004). Similarly, we review a trial court's ruling on a motion for a new trial for an abuse of discretion. *State v. Neal*, 143 Ariz. 93, 97, 692 P.2d 272, 276 (1984). Such motions "'are disfavored and should be granted with great caution.'" *State v. Spears*, 184 Ariz. 277, 287, 908 P.2d 1062, 1072 (1996), *quoting State v. Rankovich*, 159 Ariz. 116, 121, 765 P.2d 518, 523 (1988).

### A. Denial of Lesser-Included Jury Instructions

¶7　　　　Larin contends the trial court erred by refusing to instruct the jury on second-degree burglary as a lesser-included offense of first-degree burglary.[1] The court denied Larin's request for the instruction, stating that "given . . . the defense . . . of mere

---

[1]On appeal, Larin does not challenge the trial court's refusal to give criminal trespass and misdemeanor assault instructions. We therefore need not address the propriety of that refusal.

4

presence, [and] . . . given the state of the evidence presented [at] trial," Larin was not entitled to a lesser-included instruction.

**¶8**         Rule 23.3, Ariz. R. Crim. P., requires the trial court to instruct the jury on "all offenses necessarily included in the offense charged." "Although the terms are often used interchangeably, a 'lesser included' offense is not always a 'necessarily included' offense for purposes of Rule 23.3." *State v. Wall*, 212 Ariz. 1, ¶ 14, 126 P.3d 148, 150 (2006). "[I]f the facts of the case as presented at trial are such that a jury could reasonably find that only the elements of a lesser offense have been proved, the defendant is entitled to have the judge instruct the jury on the lesser-included offense." *Id.* We defer to the trial court's assessment of the evidence. *Id.* ¶ 23.

**¶9**         Here, the indictment charged Larin with first-degree burglary of a residential structure, which requires proof that the defendant or an accomplice "enter[ed] or remain[ed] unlawfully in or on a residential structure with the intent to commit any theft or any felony therein," A.R.S. § 13-1507(A), and "knowingly possesse[d] . . . a deadly weapon . . . in the course of committing any theft or any felony," A.R.S. § 13-1508(A). The element that distinguishes first-degree burglary from the lesser-included offense of second-degree burglary is the knowing possession of a weapon while committing a theft or felony inside the residence.

**¶10**         Citing *Wall*, Larin claims that, despite his all-or-nothing defense of mere presence, there was sufficient evidence to support the second-degree burglary instruction. He asserts "there [was] a distinct possibility that he would have been found guilty of [second-degree burglary]" because the jury "did not believe [he] had a weapon." Larin

5

asserts the jury acquitted him of "any charges pursuant to having a gun" and argues the jury questions submitted during deliberations demonstrated the jurors had difficulty determining "who possessed weapons found in the home." Referring to their trial testimony, Larin maintains that "[A.V.] . . . did not believe [Larin] had a weapon" and S.B. testified that "she only saw two men armed with weapons in the home." Larin argues further that he never was identified as having been armed with a weapon.

¶11 First, contrary to Larin's argument, the jury found him guilty of armed robbery, clearly an offense "pursuant to [him] having a gun." Second, Larin misstates some of A.V.'s testimony and largely ignores other evidence demonstrating he did have a gun. Although A.V. testified he could not "really remember if all three had guns initially," he said he did "know that during . . . the course of the robbery, all three had pointed a gun at [him] at some point in time." A.V. believed the three suspects "at least shar[ed] one of the guns." S.B. testified she saw "two gentlemen in the hallway with guns pointed at [her]." And, finally, J.W. testified all three suspects possessed guns. Additionally, even assuming Larin did not possess a weapon, the outcome would not have been different because the jury was instructed on accomplice liability. *See* A.R.S. §§ 13-303(A), 13-1508(A). At trial, Larin did not dispute that Rada and Torre had possessed guns and committed the crimes.

¶12 Larin's defense of mere presence, in essence an "all-or-nothing defense," does not affect our analysis but simply demonstrates that there was "'little evidence on the record to support an instruction on'" second-degree burglary. *Wall*, 212 Ariz. 1, ¶ 29, 126 P.3d at 153, *quoting State v. Caldera*, 141 Ariz. 634, 637, 688 P.2d 642, 645 (1984).

6

Here, Larin does not dispute that the crimes were committed; he simply maintains he was merely present and did not participate in their commission. But the evidence established that all three men participated in the crimes in some manner—by holding the victims at gunpoint or by searching for and collecting personal property in the house. Consequently, no rational juror could conclude Larin had committed only the lesser offense of second-degree burglary. *See id.* ¶ 18. "It is not enough that, as a theoretical matter, the jury might simply disbelieve the state's evidence on one element of the crime because this would require instructions on all offenses theoretically included in every charged offense." *Id.* (internal citations omitted). Therefore, Larin was either guilty of the crimes as charged or he was innocent. *See id.* ¶ 29. And, because the evidence did not support the lesser-included instruction for second-degree burglary, *see id.*, the trial court did not abuse its discretion by refusing to give it.

### B. Denial of Motion for a New Trial

¶13 After trial, Larin filed a motion for a new trial on the ground that the trial court had erred in the instruction of the jury on a matter of law, substantially prejudicing him. *See* Ariz. R. Crim. P. 24.1(c)(4). Larin argued the court should have instructed the jury on second-degree burglary, robbery, and false imprisonment.[2] The court denied the motion, concluding that Larin needed "some evidence to support" the instructions, and "where [Larin] asserted mere presence and . . . no accomplice liability, . . . it [was] improper to give the lesser-included offense[s] as requested."

---

[2]Because we conclude the trial court did not abuse its discretion with respect to the second-degree burglary instruction, we need not address further his claim regarding the court's failure to grant a motion for a new trial based on the same instruction.

¶14    Although we generally review motions for a new trial for an abuse of discretion, *Neal*, 143 Ariz. at 97, 692 P.2d at 276, Larin did not request instructions for robbery and unlawful imprisonment, raising this claim for the first time in his motion for a new trial. By failing to timely raise an issue at trial, including a request for a jury instruction, the defendant waives the right to seek relief for all but fundamental, prejudicial error. *State v. Gatliff*, 209 Ariz. 362, ¶ 9, 102 P.3d 981, 983 (App. 2004). The defendant must establish error occurred that was fundamental in nature and resulted in prejudice. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005).

¶15    Concerning the lesser-included offense of robbery, Larin essentially makes the same arguments that he made in support of the lesser-included offense instruction for second-degree burglary. Larin relies on *Wall* for the proposition that "it is the intent of the one charged as an accomplice, rather than the intent of the main actor, that controls the accomplice's criminal responsibility." 212 Ariz. 1, ¶ 20, 126 P.3d at 152. Larin argues, because he "was found not guilty of any charges [related to] a weapon," it was likely that, had the jury received robbery instructions, "[it] would have found him not guilty of [a]rmed [r]obbery" but, instead, guilty of robbery. Larin claims A.V.'s testimony that "all [suspects] had threatened [A.V.]" but "one of the perpetrators . . . may not have had a weapon" is evidence supporting a robbery instruction.

¶16    Robbery requires proof that "in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property." A.R.S. § 13-1902(A). Armed

8

robbery includes all of these elements, but also requires proof that the defendant was "armed with a deadly weapon or a simulated deadly weapon." A.R.S. § 13-1904(A)(1). A defendant may be convicted of armed robbery as an accomplice. A.R.S. §§ 13-303(A), 13-1904(A).

¶17        Larin's reliance on *Wall* is misplaced. Here, the state presented ample evidence that at least two of the men were armed with guns, and, even assuming Larin did not have a gun, he assisted with searching and collecting personal property around the house. The trial court instructed the jury on accomplice liability, *see* A.R.S. §§ 13-301, 13-303(A), and we presume the jury followed the court's instructions in reaching the verdicts, *State v. Slover*, 220 Ariz. 239, ¶ 24, 204 P.3d 1088, 1095 (App. 2009). The evidence did not support a lesser-included offense instruction of robbery, and the court did not commit any error, much less fundamental error, in denying Larin's motion for a new trial based on the absence of this instruction. *See Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607.

¶18        Larin next argues the trial court erred by failing to instruct the jury on unlawful imprisonment as a lesser-included offense of kidnapping. Larin maintains "the jury could have determined that [he] had no intent to inflict physical injury or otherwise aid in the commission of a felony" and "could have found [him] guilty of [u]nlawful [i]mprisonment only." Larin contends that, because "three [men] order[ed] the two victims to remain on the couch," the jury could have believed he was "unarmed or not attempting to aid" the others, and the court therefore should have given an unlawful imprisonment instruction.

9

**¶19** Unlawful imprisonment is defined as "knowingly restraining another person." A.R.S. § 13-1303(A); *see also State v. Hargrave*, 225 Ariz. 1, ¶ 38, 234 P.3d 569, 580 (2010). "The 'distinguishing element between kidnapping and unlawful imprisonment is the perpetrator's state of mind, i.e., whether the unlawful imprisonment was accompanied with one of the enumerated intents set out in A.R.S. § 13-1304 so as to elevate the unlawful imprisonment to kidnapping.'" *Hargrave*, 225 Ariz. 1, ¶ 38, 234 P.3d at 580, *quoting State v. Detrich*, 178 Ariz. 380, 383, 873 P.2d 1302, 1305 (1994); *see State v. Tschilar*, 200 Ariz. 427, ¶ 40, 27 P.3d 331, 341 (App. 2001). Larin was charged with kidnapping based on knowingly restraining another person with the intent to (1) inflict death, physical injury, or a sexual offense on the victim, or (2) otherwise aid in the commission of a felony. *See* A.R.S. § 13-1304(A)(3). And, the listed felonies provided in the jury instructions included first-degree burglary, armed robbery, aggravated robbery, aggravated assault, and kidnapping. *See* A.R.S. §§ 13-1204(F), 13-1304(B), 13-1508(B), 13-1903(B), 13-1904(B).

**¶20** The record simply does not support Larin's argument that he did not aid in the commission of any of the listed felonies. Even assuming only Torre and Rada possessed guns, Larin searched for and collected the heroin, money, and other items in the house, thereby aiding in the commission of the robbery and burglary offenses. Because there was insufficient evidence to support the unlawful imprisonment instruction, the trial court did not commit any error, much less fundamental, prejudicial error. *See Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607.

10

**Witness's In-Court Identification**

¶21 Larin next argues the trial court "erred in denying a mistrial when the [state] asked [J.W.] if he could identify anyone in the courtroom" as one of the men involved in the crimes. The trial court has broad discretion in ruling on motions for a mistrial, *State v. Williams*, 209 Ariz. 228, ¶ 47, 99 P.3d 43, 54 (App. 2004), and we review the court's denial of a motion for an abuse of discretion, *State v. Moody*, 208 Ariz. 424, ¶ 124, 94 P.3d 1119, 1151 (2004).

¶22 During direct examination, when the prosecutor asked J.W. if any of the three men who had committed the offenses were present in the courtroom, J.W. replied "yes." Larin objected and, during a bench conference, stated he would move for a mistrial if the trial court allowed J.W. to identify him. Larin claimed the state never disclosed that any of the victims would make in-court identifications and stated he would have called an expert witness on the issue of identification had he known. The state explained to the court that J.W. never had made an out-of-court identification. The week before trial, during a victim meeting, J.W. told the prosecutor that "he thought he could identify some of the [defendants]," and, right before he testified, J.W. had informed the prosecutor of his ability to identify Larin. The court sustained Larin's objection, finding that the prosecutor had not properly disclosed the in-court identification. Larin then moved to strike the question and answer and moved for a mistrial, arguing "there [wa]s no way . . . to unring that bell." The court denied the motion for a mistrial but ordered the jury to disregard the identification question.

11

¶23　　　　At the conclusion of J.W.'s testimony, the trial court held a bench conference to review written questions submitted by jurors. The court decided not to ask J.W. the following questions: "Is [Larin] one of the guys who took off their masks?"; "Did [J.W.] see [Larin] unmasked? With what attire?"; and "What number suspect was [Larin]?" Larin renewed his motion for a mistrial based on these three questions, which he claimed "clearly signaled [the jury] believe[d that he] was one of the[] people . . . [J.W.] could identify." The court pointed out that it had already precluded J.W. from making the in-court identification, implicitly denying Larin's motion.

¶24　　　　On the third day of trial, Larin filed a written motion requesting that the trial court grant a mistrial, set a *Dessureault*[3] hearing, or strike J.W.'s testimony and give a limiting instruction. Larin asserted that the state's failure to disclose J.W.'s ability to identify him violated Rule 15.1, Ariz. R. Crim. P. During argument on the motion, the prosecutor explained that "[she] did not remember" that J.W. had said he could identify Larin, but her paralegal was present during the meeting and took notes. The notes indicated that J.W. initially had thought he could identify Larin, but, as the meeting continued, "he became rather uncertain." The prosecutor then told J.W. to wait until "[he] got to court" to see what he remembered and who he could identify. Right before testifying, J.W. informed the prosecutor he could identify Larin as the third man. The prosecutor admitted that she "should have disclosed to [Larin's counsel]" upon learning this information, but, given that "it was a ten-minute disclosure violation," she "[was] not sure what the remedy would have been."

---

[3] *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969).

¶25 The trial court noted that although the state's disclosure was untimely, it was not done in "bad faith." The court denied Larin's motion, ruling that any further curative instructions would be inappropriate and that J.W. did not have a right to a *Dessureault* hearing because no out-of-court identification had been made.

¶26 On appeal, Larin contends the trial court should have granted the motion for a mistrial because the state had asked J.W. to identify Larin without giving Larin "prior disclosure" or a *Dessureault* hearing.[4] He also argues the three questions submitted by the jury demonstrate the jurors "did not strike the question from their minds" and believed J.W. could identify Larin and wanted to "hear more information about the identification." He argues he did not "receive a fair trial" as a result of the jury's disregarding the court's order.

¶27 The state must provide timely disclosure to the defendant of material evidence, including the relevant written or recorded statements of the state's witnesses. *See* Ariz. R. Crim. P. 15.1(b)(1) and (c); *see also State v. Gulbrandson*, 184 Ariz. 46, 63, 906 P.2d 579, 596 (1995). "The purpose of this rule is 'to give full notification of each side's case-in-chief so as to avoid unnecessary delay and surprise at trial.'" *State v.*

_____

[4]To the extent Larin suggests he was entitled to a *Dessureault* hearing, we disagree. "In *Dessureault*, our supreme court established a process for challenging pretrial identification procedures that are 'significantly suggestive and as such materially increase[] the dangers inherent in eye witness identification.'" *State v. Nottingham*, 231 Ariz. 21, ¶ 6, 289 P.3d 949, 952 (App. 2012), *quoting Dessureault*, 104 Ariz. at 383, 453 P.2d at 954 (alteration in *Nottingham*). Here, J.W. never made a pretrial identification, and *Dessureault* is not implicated when only an in-court identification is made. *See State v. Cartwright*, 155 Ariz. 308, 311, 746 P.2d 478, 481 (1987) ("[T]here was no need to hold a *Dessureault* hearing because the witness had not participated in any pre-trial identification procedures.").

13

*Armstrong*, 208 Ariz. 345, ¶ 38, 93 P.3d 1061, 1069 (2004), *quoting State v. Dodds*, 112 Ariz. 100, 102, 537 P.2d 970, 972 (1975). If a party seeks to use information not disclosed at least seven days before trial, the party "shall obtain leave of court by motion." Ariz. R. Crim. P. 15.6(d). For disclosure violations, the trial court may impose any remedy or sanction it finds appropriate. Ariz. R. Crim. P. 15.7(a); *see Armstrong*, 208 Ariz. 345, ¶ 38, 93 P.3d at 1069. But, "[b]arring willful ignorance or other bad faith, [the state] cannot reasonably be required to disclose in advance information the victim unexpectedly reveals for the first time during trial." *State v. Marshall*, 197 Ariz. 496, ¶ 12, 4 P.3d 1039, 1043 (App. 2000).

¶28　　　Even assuming the state failed to properly disclose J.W.'s in-court identification, we are satisfied beyond a reasonable doubt that neither the prosecutor's nor jury's questions affected the verdicts. *See State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993). Larin's presence was not an issue because he already had admitted being present during the commission of the offenses—a fact Larin seemingly concedes on appeal. All three men were apprehended at the crime scene. There was evidence that one of the suspects was wearing a dark, hooded sweatshirt, which Larin was wearing at the time of his arrest. Moreover, the car A.A. observed in the alley occupied by three masked men matched a description of a car belonging to Larin's sister, which was parked near the victims' house at the time of the incident. The trial court therefore did not abuse its discretion in denying Larin's motions for a mistrial on this basis. *See Moody*, 208 Ariz. 424, ¶ 124, 94 P.3d at 1151.

14

**Dangerous-Offense Allegations**

¶29 In its cross-appeal, the state argues the trial court erred by "refusing to submit dangerous offense enhancement interrogatories after the jury returned guilty verdicts." We review a trial court's decisions regarding requested jury instructions and proposed alterations to the verdict forms for an abuse of discretion. *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995); *State v. Harlow*, 219 Ariz. 511, ¶ 5, 200 P.3d 1008, 1010 (App. 2008). But we review questions of law de novo. *Cranmer v. State*, 204 Ariz. 299, ¶ 8, 63 P.3d 1036, 1038 (App. 2003).

¶30 A dangerous offense is "an offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury on another person." A.R.S. § 13-105(13). Section 13-704, A.R.S., provides an enhanced sentencing scheme for dangerous offenders. An allegation of dangerousness essentially "adds to the underlying offense an element that subjects the defendant to increased penalties." *State v. McCray*, 218 Ariz. 252, ¶ 19, 183 P.3d 503, 508 (2008).

¶31 When Larin was indicted, the state alleged that each of the offenses, except the prohibited possessor charge, was dangerous. While the jury was deliberating, the prosecutor informed the trial court she had "completely overlooked" that the offenses "were alleged to be dangerous" and that the jury should have been given corresponding instructions and interrogatories. She explained that she realized her mistake while the court was reading the final instructions to the jury but did not raise the issue then because it "was not the time, nor place, to bring it up." Rather than requesting to revise the

15

verdict forms after the jury had retired to deliberate, the prosecutor asked the court to "send an instruction . . . whether this is a dangerous crime as part of the aggravation phase." Larin objected, arguing that deciding the issue at that time "might prejudice" the jury because "they are going to know a lot more about [him]." In response, the prosecutor said she had "no additional testimony for the aggravation phase." Larin, nonetheless, maintained that the enhancements "change the entire sentencing scheme" and the "purpose [of] aggravation is not to determine dangerous nature."

¶32　　After reviewing the Revised Arizona Jury Instructions (RAJI), the trial court denied the state's request to include the dangerous-nature interrogatories in the aggravation phase of Larin's trial. The court explained:

> The RAJI says if you find the defendant guilty and then it has the interrogatory as to how you do it. That suggests to me that the proper way to do it would be to do it when they go back to deliberate, give the instruction in the verdict form. And I know that both counsel approved the jury instructions and the verdict forms and I gave you an opportunity.

¶33　　The state now argues the trial court's ruling was in error. Relying on Rule 19.1(b), Ariz. R. Crim. P., and *State v. Patterson*, 230 Ariz. 270, 283 P.3d 1 (2012), the state contends the court "was required to withhold the dangerous nature enhancements from the jury until the aggravation phase of trial." The state further maintains that the RAJI "appear[s] to misstate the law" and that "the trial court was required to disregard the recommended instruction and follow the dictates of Rule 19.1(b)." In response, Larin asserts that the state has misinterpreted *Patterson* and suggests that the court properly relied on the RAJI.

16

¶34     Rule 19.1(b) provides that prior convictions and non-capital sentencing allegations such as dangerousness should not be considered by the jury during the guilt phase of trial. *See also McCray*, 218 Ariz. 252, ¶ 19, 183 P.3d at 508 (dangerous nature must be charged and either admitted by defendant or found by trier of fact). Pursuant to Rule 19.1(b), unless the allegation is an element of the underlying offense, "[d]uring the trial of the case no instructions shall be given, reference made, nor evidence received concerning" the dangerous-nature allegation, "except as permitted by the rules of evidence." The purpose of the rule is to prevent the jury from considering inadmissible propensity evidence during the guilt phase of trial. *See State ex rel. McDougall v. Municipal Court*, 160 Ariz. 324, 326, 772 P.2d 1177, 1179 (App. 1989).

¶35     In *Patterson*, our supreme court clarified the procedure outlined in Rule 19.1(b).[5] The court explained:

> When the State alleges a non-capital sentencing aggravator such as dangerousness, the aggravator should not be mentioned in jury instructions or otherwise during the guilt phase of the trial. The non-capital sentencing aggravator should be tried only if a guilty verdict is returned unless the defendant has admitted the allegation.

*Patterson*, 230 Ariz. 270, ¶ 29, 283 P.3d at 8 (citations omitted). Under the facts of that capital case, the court said it was error to submit the dangerousness allegation to the jury during the guilt phase of trial but the error was harmless because the defendant did not dispute killing the victim with a butcher knife, "which any reasonable jury would find to

---

[5]Although *Patterson* was decided after Larin's trial, we nonetheless apply its reasoning because our supreme court was interpreting the language of a procedural rule, Rule 19.1(b), which has not changed since 2002. *See* 203 Ariz. LV-LVI (2002).

17

be a dangerous instrument." *Id.* ¶¶ 30-31. The court noted the evidence of dangerousness was the same as that for the underlying murder and the jury was instructed to consider dangerousness only if it first found the defendant guilty of murder. *Id.* ¶ 31. Under those circumstances, the court concluded the "dangerousness finding was implicit in the guilty verdict." *Id.*

¶36 Here, applying Rule 19.1(b) and *Patterson*, we agree with the state that the trial court should have allowed the jury to determine the dangerous-nature enhancements during the aggravation phase of Larin's trial. Except to the extent the dangerousness allegations were elements of the crimes originally charged or ultimately considered by the jury, they "should not [have] be[en] mentioned in [the] jury instructions or otherwise during the guilt phase of the trial" but, instead, should have been tried only after the jury returned guilty verdicts. *Patterson*, 230 Ariz. 270, ¶ 29, 283 P.3d at 8. Larin had not admitted the allegations. He contends, however, that *Patterson* is inapplicable because it was a capital case. But, this distinction is immaterial because Rule 19.1(b) explicitly applies to "all prosecutions in which a . . . non-capital sentencing allegation . . . is alleged." We also disagree with Larin's argument that "[i]t would deny [him] due process of law and a fair trial to insert the dangerous nature allegations into an interrogatory" after the jury had retired to deliberate his guilt. Accordingly, we hold that in a non-capital case, Rule 19.1(b) requires that a sentencing aggravator such as dangerousness should not be mentioned in jury instructions or otherwise during the guilt phase of the trial unless it is an element of the offense. If the aggravator is not an element of the offense, it should be tried only if a guilty verdict is returned unless the defendant

18

has admitted the allegation. If the aggravator is an element, the court may include the instructions and interrogatories during the guilt phase of the trial.

¶37 As the trial court pointed out, however, the RAJI states that a dangerous-nature interrogatory should be "add[ed] to the standard 'guilty/not-guilty' verdict form." State Bar of Arizona, *Revised Arizona Jury Instructions (Criminal)* Std. 7.04 user note (2012). Admittedly, this language suggests dangerousness should always be submitted to the jury during the guilt phase of trial. But the user note preceded *Patterson*, and, in any event, courts are not required to follow the RAJI. *See State v. Logan*, 200 Ariz. 564, ¶ 12, 30 P.3d 631, 633 (2001) (explaining RAJI not court-approved instructions but merely proposed instructions created by State Bar of Arizona). Based on the clear dictates of Rule 19.1(b), we disapprove of the RAJI's direction to include a dangerous-nature interrogatory on the verdict form in those cases where dangerousness is not an element of the offense charged. The court thus erred by refusing to allow the jury to make findings on dangerousness allegations during the aggravation phase of this case.

¶38 Generally, an allegation of dangerousness must be found by a jury. *See State v. Parker*, 128 Ariz. 97, 98, 624 P.2d 294, 296 (1981); *McCray*, 218 Ariz. 252, ¶ 19, 183 P.3d at 508. However, a jury need not make a finding of dangerousness where it is "inherent in the crime." *State v. Gatliff*, 209 Ariz. 362, ¶ 18, 102 P.3d 981, 985 (App. 2004) (dangerousness inherent in arson of occupied structure because fire is dangerous instrument); *see also Patterson*, 230 Ariz. 270, ¶ 31, 283 P.3d at 8 (dangerousness "implicit" in first-degree murder). In determining whether dangerousness is inherent in an offense, we look to the statutes that define the offense and define

19

dangerousness, *Gatliff*, 209 Ariz. 362, ¶ 13, 102 P.3d at 984, and we also consider the indictment and whether "an element of the offense charged contains an allegation and requires proof of" dangerousness, *Parker*, 128 Ariz. at 98, 624 P.2d at 296.

¶39 Here, the state argues two of the offenses with which Larin was charged and convicted—first-degree burglary and armed robbery—do not require "a separate jury finding on the dangerous nature enhancement" because "the offenses involv[e] a deadly weapon." Larin has not challenged this argument but instead limited his response to the appropriateness of deciding dangerousness during the aggravation phase of trial. We address each offense in turn.

¶40 First-degree burglary requires that a defendant or an accomplice "knowingly possess[]" explosives, a deadly weapon, or a dangerous instrument in the course of committing a felony. A.R.S. § 13-1508(A). In contrast, a dangerous offense requires "the discharge, use or threatening exhibition" of a deadly weapon or dangerous instrument. A.R.S. § 13-105(13). Larin's indictment mirrored the language of § 13-1508(A), alleging the knowing possession of a firearm. It is conceivable for a defendant or an accomplice to knowingly possess a deadly weapon or dangerous instrument without the discharge, use, or threatening exhibition of it. For example, a defendant may knowingly possess a concealed firearm during the commission of a felony, triggering the requirements for first-degree burglary, but choose not to use it in any manner, such that dangerousness cannot be proven. *See State v. Eastlack*, 180 Ariz. 243, 258, 883 P.2d 999, 1014 (1994) (defendant convicted of first-degree burglary but jury did not find

20

offense to be dangerous). Accordingly, first-degree burglary is not an inherently dangerous offense as charged in this case.

¶41        Armed robbery can be committed in two ways, *see* A.R.S. § 13-1904(A), but in Larin's indictment, the state specifically alleged that he had violated subsection (1), which requires that a defendant or an accomplice "be armed with a deadly weapon or a simulated deadly weapon" during the course of committing robbery. The definition of dangerousness does not include the use of a "simulated deadly weapon." *See* A.R.S. § 13-105(13). And, a defendant could be convicted of armed robbery for using a simulated deadly weapon without that offense being dangerous. Nevertheless, armed robbery was charged in Larin's indictment as involving a deadly weapon, specifically "a firearm." *See* A.R.S. § 13-105(15)*; State v. Spratt*, 126 Ariz. 184, 186, 613 P.2d 848, 850 (App. 1980) (firearm is deadly weapon). And, the jury convicted Larin of "armed robbery, as alleged in . . . the Indictment." Thus, because armed robbery as charged was dangerous by its very nature, the finding of dangerousness was inherent in the jury's verdict. *Cf. State v. Tresize*, 127 Ariz. 571, 574, 623 P.2d 1, 4 (1980) (jury's finding of guilt on armed robbery charge necessarily involved conclusion defendant committed dangerous offense).

¶42        The enhanced sentencing scheme for dangerous offenders is mandatory where applicable. *See* A.R.S. § 13-704(L) ("The penalties prescribed by this section shall be substituted for the penalties otherwise authorized by law if . . . an allegation of dangerous offense is charged in the indictment or information and admitted or found by the trier of fact."). Although Larin's armed robbery conviction was inherently dangerous,

21

we acknowledge that the jury nonetheless could have found the dangerousness allegation not proven. *See State v. Parsons*, 171 Ariz. 15, 15-16, 827 P.2d 476, 477 (App. 1991) (finding no error when jury rendered inconsistent verdicts finding defendant guilty of aggravated assault using deadly weapon or dangerous instrument and finding state failed to prove dangerousness). Notably, in separate proceedings, the jury acquitted Larin of the prohibited possessor charge and found the aggravator of use, threatened use, or possession of a deadly weapon or dangerous instrument not proven. Accordingly, the trial court cannot subject Larin to the enhanced sentencing scheme of § 13-704 absent a jury finding on dangerousness.[6] *See Parker*, 128 Ariz. at 98, 624 P.2d at 296.

## Disposition

¶43      For the foregoing reasons, we affirm Larin's convictions but vacate his sentences and remand for proceedings in accordance with this opinion.


/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge


CONCURRING:


/s/ *Michael Miller*
MICHAEL MILLER, Judge


/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

---

[6]Like with first-degree burglary, dangerousness is not inherent in Larin's convictions for aggravated robbery and kidnapping. A.R.S. §§ 13-1903, 13-1304.

22