IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

FERNANDO NAVARRO-FIGUEROA,
*Petitioner*,

*v.*

THE STATE OF ARIZONA,
*Respondent*.

No. 2 CA-SA 2025-0028
Filed August 25, 2025

———————————————

Special Action Proceeding
Pima County Cause No. CR20195850009
The Honorable J. Alan Goodwin, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

———————————————

COUNSEL

Ralls & Wille, P.C., Tucson
By Clarissa M. Todd
*Counsel for Petitioner*

Kristin K. Mayes, Arizona Attorney General
By Nanette Morrow and Philip Casey Grove, Assistant Attorneys General,
Tucson
*Counsel for Respondent*

_____

**OPINION**

Judge Vásquez authored the opinion of the Court, in which Presiding Judge Eckerstrom concurred. Judge Sklar concurred in part and dissented in part.

_____

V Á S Q U E Z, Judge:

**¶1**         Fernando Navarro-Figueroa seeks special action review of the trial court's order deferring consideration of his pretrial motion for a probable cause determination of the alleged sentence enhancer until after the state's case in chief at trial. Because that ruling is inconsistent with the plain language of our criminal rules and our supreme court's directive in *Chronis v. Steinle*, 220 Ariz. 559 (2009), we accept jurisdiction and grant relief.

**Factual and Procedural Background**

**¶2**         Navarro-Figueroa, along with five co-defendants, has been charged with eighteen counts relating to "THC vape pens, THC oil, marijuana, money laundering, possession of a weapon, conspiracy, and illegally conducting an enterprise." In addition to aggravating circumstances, the state filed an allegation that Navarro-Figueroa is a serious drug offender under A.R.S. § 13-3410 and therefore subject to an enhanced sentence of life imprisonment. Navarro-Figueroa timely filed a pretrial motion for a probable cause determination of the alleged enhancer under Rule 13.5(a), Ariz. R. Crim. P. After argument on the motion, the trial court deferred its ruling on the motion until the conclusion of the state's case in chief. Navarro-Figueroa's petition for special action followed.

**Jurisdiction**

**¶3**         "Whether to accept jurisdiction of an appellate special action is within the court's discretion . . . ." Ariz. R. P. Spec. Act. 12(a). Factors that support accepting jurisdiction include questions "of first impression," "of statewide importance," and "the resolution of which will materially advance the efficient management of the case." Ariz. R. P. Spec. Act. 12(b). Navarro-Figueroa's petition raises an issue of first impression on a purely legal question: the interpretation and application of Rule 13.5(a) in non-capital cases. Moreover, Navarro-Figueroa is correct that the issue would likely become moot in the event he is convicted and sentenced or

acquitted. *Cf. State v. Agnew*, 132 Ariz. 567, 573 (App. 1982) (challenge to probable cause determination moot after conviction). Accordingly, we accept special action jurisdiction to address the issue.

## Discussion

¶4 The interpretation of rules is an issue of law that we review de novo. *Johnson v. Hartsell*, 254 Ariz. 585, ¶ 14 (App. 2023). We interpret rules using the principles of statutory construction. *State v. Greene*, 255 Ariz. 37, ¶ 76 (2023). "Thus, we 'interpret rules of procedure by their plain meaning and we read them in conjunction with each other and harmonize them whenever possible.'" *Id.* (quoting *State v. Tillmon*, 222 Ariz. 452, ¶ 8 (App. 2009)).

¶5 Rule 13.5(a)—which applies to non-capital defendants—states, in part, "A defendant may challenge the legal sufficiency of the State's [sentencing] allegations by filing a motion under Rule 16." Rule 16, Ariz. R. Crim. P., governs "Pretrial Motions and Hearings." Under Rule 16.1(b), parties "must make all motions no later than 20 days before trial." Rule 13.5(c)—which applies to capital defendants—has materially identical language to Rule 13.5(a). In this case, Navarro-Figueroa's motion for a probable cause determination was filed February 21, 2025—well over two months before the then scheduled trial date of May 5, 2025.

¶6 The state contends that although Rule 16.1 provides that the defendant's motion must be made before trial, the trial court is not required to hold a pretrial hearing to address it. Although the state is correct that the rules are silent as to the timing of a probable cause hearing, Navarro-Figueroa cites *Chronis* as guidance for when that hearing must occur.

¶7 In *Chronis*, our supreme court explained the meaning of a "challenge [to] the legal sufficiency" in the context of Rule 13.5(c). 220 Ariz. 559, ¶¶ 5-10 (quoting Ariz. R. Crim. P. 13.5(c)). There, the state argued that language meant the defendant could question whether the charging documents provided sufficient notice. *Id.* ¶ 9. Our supreme court relied on the petition for adoption of Rule 13.5(c), which was submitted to "quickly" conform our statutes to the Constitution following *Ring v. Arizona*, 536 U.S. 584 (2002). *Chronis*, 220 Ariz. 559, ¶ 12. The court also quoted a later filed motion to amend several Arizona Rules of Criminal Procedure, which "explicitly represented that Rule 13.5(c) would 'allow the defendant to request a determination of probable cause [as to noticed aggravators] before trial.'" *Chronis*, 220 Ariz. 559, ¶¶ 12, 14 (alteration in *Chronis*). Thus, the

3

court determined that Rule 13.5(c) allows a defendant to request a probable cause hearing following the procedures of Rule 5, Ariz. R. Crim. P. *Chronis*, 220 Ariz. 559, ¶¶ 15, 18.

¶8 Rule 5, which governs the "Preliminary Hearing," sets forth the procedures for a defendant to challenge probable cause when charged with a felony by complaint. Those procedures contemplate a prompt resolution of probable cause as a condition of further prosecution. It requires a preliminary hearing to occur soon after the initial appearance. Ariz. R. Crim. P. 5.1(a). And it allows for continuances only if "extraordinary circumstances exist" and "delay is indispensable to the interests of justice." Ariz. R. Crim. P. 5.1(c). An in-custody defendant may request a hearing "as soon as practicable," and the magistrate must not delay the hearing "more than necessary to secure the attendance of counsel and necessary witnesses, and ensure the ability to record a verbatim record of the proceeding." Ariz. R. Crim. P. 5.1(d).

¶9 The state posits that *Chronis* should not extend beyond capital defendants because those defendants are differently situated. Capital cases indeed have some unique procedural features triggered by the allegation of capital aggravating factors. *Compare, e.g.*, Ariz. R. Crim. P. 19.1(e) (setting forth trial procedures in capital case for jury determination of sentence), *with* Ariz. R. Crim. P. 26 (setting forth procedures for judicial determination of sentence in non-capital cases). But the language of Rule 13.5 sounds in the similarities between capital and non-capital aggravating factors rather than in their differences.

¶10 Perhaps most importantly, the respective rules allowing non-capital and capital defendants to challenge the sufficiency of an alleged aggravating factor are both found in Rule 13.5, are worded almost identically, and were amended, on an emergency basis, simultaneously. *See* Ariz. R. Crim. P. 13.5(a),(c) (both provisions state, "A defendant may challenge the legal sufficiency of the State's allegation[s] by filing a motion under Rule 16," with subsection (c) using the singular "allegation"); *see also Chronis*, 220 Ariz. 559, ¶¶ 12-13. To conclude from this language and context that Rule 13.5 establishes different procedural rights for capital and non-capital defendants, we would offend long-settled norms of textual interpretation — and semantic logic. *See Kelly v. Blanchard*, 255 Ariz. 197, ¶ 15 (App. 2023) ("[I]dentical words used in different parts of the same rule are intended to have the same meaning.").

¶11 Our supreme court had a logical reason for adopting identical language in this context. In both the capital and non-capital arenas, a

defendant is constitutionally entitled to a jury trial as to any sentencing allegation, other than a prior conviction, that increases the sentencing range available for the underlying offense. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Ring*, 536 U.S. at 602, 609. In both capital and non-capital cases, such a finding may substantially increase the severity of the sentence the defendant faces if convicted. The enhancement alleged against Navarro-Figueroa, for example, subjects him to mandatory life imprisonment. *See* § 13-3410.

¶12 But we need not speculate about the purpose energizing the amendments to Rule 13.5. In *Chronis,* our supreme court explained that Rule 13.5 was adopted to conform our procedures with *Ring*. 220 Ariz. 559, ¶¶ 12, 14. *Ring* applied *Apprendi*'s mandate to capital cases. 536 U.S. at 602, 609. In so doing, the Court's majority repeatedly questioned the logic of distinguishing between the constitutional procedures for finding the existence of capital and non-capital aggravating factors. *Id.* at 589, 601, 603, 606, 609. And, in articulating those procedures for non-capital offenses, it listed the requirement of an *indictment*, a procedure for finding probable cause. *Id.* at 600 (citing *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999)).

¶13 Thus, in *Chronis*, the Arizona Supreme Court specifically interpreted Rule 13.5(c) to allow a probable cause challenge to a capital aggravating factor. It did so based on controlling jurisprudence that required equal procedural treatment for capital and non-capital aggravating factors at the stage of litigation. Accordingly, we must follow the court's own reasoning and conclude that its intent in adopting the rule "was to provide a right to a probable cause determination on aggravators as proposed by the Motion to Amend," *Chronis*, 220 Ariz. 559, ¶ 15, that is, "before trial," *id.* ¶¶ 18-19 & 14.

¶14 By deferring its ruling on Navarro-Figueroa's motion until after the close of the state's case in chief at trial, the trial court undermined the purpose of Rule 5 proceedings—to facilitate a prompt resolution of probable cause as a condition of further prosecution. Fulfilling that purpose was not discretionary with the trial court but was required by *Chronis* and the United States Constitution. *Id.* ¶ 14 (Rule 13.5 promulgated to address constitutional concerns, arising from *Ring*, that *Apprendi* aggravating factors be subject to species of probable cause determination); *see also Ring*, 536 U.S. at 600 (under the Fifth and Sixth Amendments, "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment" (quoting *Jones*, 526 U.S. at 243 n.6)).

**¶15** By postponing that proceeding until the conclusion of the state's case in chief on the underlying charges, the trial court essentially transformed the motion into one under Rule 20, Ariz. R. Crim. P. But Rule 20 already allows a defendant to challenge the sufficiency of "an aggravating circumstance or other sentence enhancement." Thus, the court has rendered Rule 13.5(a) superfluous in a way that we cannot sustain. *See Stambaugh v. Killian*, 242 Ariz. 508, ¶ 14 (2017) (we do not interpret statutes in manner that would render clause superfluous). Moreover, the court's ruling deprives Navarro-Figueroa of the benefit of a pretrial probable cause determination. If the allegation lacks probable cause, Navarro-Figueroa's prison exposure is significantly lower. *See, e.g.*, A.R.S. §§ 13-702, 13-703, 13-3410. Thus, whether a sentencing enhancement can go to the jury has serious consequences on many of the defendant's pretrial considerations, including whether to retain private counsel and whether to seek a plea bargain.

**¶16** Rule 19.1, Ariz. R. Crim. P., likewise supports our conclusion that the probable cause hearing must take place before trial. Rule 19.1(c) mandates that "the trial must proceed initially as though there were no . . . sentencing allegations, unless [it] is an element of the charged crime," including that evidence may not be admitted concerning the sentencing allegation except as permitted by the rules of evidence. Moreover, nothing in Rule 19.1(c) contemplates a probable cause hearing between the guilt phase and aggravation phase of trial. In this case, the serious drug offender allegation adds elements beyond those for the crimes for which Navarro-Figueroa has been charged. *Compare* § 13-3410 (defining serious drug offenders), *with* A.R.S. §§ 13-1003 (conspiracy), 13-2312 (illegal control of an enterprise), 13-3405 (marijuana possession, use, production, sale, or transportation), *and* 13-3408 (narcotics possession, use, production, sale, or transportation). Therefore, the trial court's statement that it would consider whether probable cause had been established "based on the evidence presented" during the state's case in chief at trial is incongruent with Rule 19.1(c).[1]

---

[1]Deferring the probable cause determination may also give the state an unfair second chance to prove probable cause. If, after the state's case in chief, the trial court is not satisfied that the state has shown probable cause for the sentence enhancement and proceeds to a probable cause hearing, then the state essentially receives a second opportunity to prove its allegations—something it would not have if the hearing took place before trial. *See* Ariz. R. Crim. P. 5.3(a)(3) ("At the close of the State's case, the

¶17 The state argues it will bear a substantial burden by having to present evidence at a probable cause hearing. And our dissenting colleague echoes the trial court's apparent concerns regarding the extent of such a hearing. But under Rule 5.4(c), the evidence presented at a probable cause hearing "may include hearsay" from an expert's written report, from documentary evidence without foundation, and from a witness's testimony about another person's declarations.[2] Thus, we are unpersuaded that such a hearing would resemble a trial or be particularly burdensome for the state.[3] *See Chronis*, 220 Ariz. 559, ¶ 19 ("Given the focused nature of probable cause hearings and the prosecution's wide ability to offer different forms of evidence, we are not persuaded by the State's argument that allowing probable cause determinations on aggravating factors will impinge upon the authority of prosecutors or the rights of victims."). Perhaps more importantly, defendants are more likely to be incentivized to contest aggravating factors and sentence enhancements well before trial to garner the benefits of better-informed plea negotiations.

¶18 As our dissenting colleague points out, our review is limited to the trial court's stated intention for when it would hear Navarro-Figueroa's motion. But the court made clear it would not hold a probable cause hearing before trial. Because that ruling deprives Navarro-Figueroa of the very benefits intended from a pretrial determination of probable cause under Rule 13.5(a) and *Chronis*, it is error.

---

magistrate must determine and state for the record whether the State's case establishes probable cause.").

[2]At oral argument before this court, Navarro-Figueroa represented that the state had brought one witness in anticipation of the probable cause hearing below.

[3]We do not address the state's suggestion that because sentence enhancement allegations can be filed after trial, Navarro-Figueroa is not entitled to a pretrial *Chronis* hearing. *But see State v. Nichols*, 201 Ariz. 234, ¶¶ 13-15 (App. 2001) (allegation of serious drug offense enhancement must be provided no later than twenty days before trial). The state's argument is based on hypothetical circumstances not present here, where the state filed its sentencing enhancement allegations before trial.

**Disposition**

¶19 We accept special action jurisdiction and grant relief, vacating the trial court's deferral and remanding for the court to consider Navarro-Figueroa's probable cause motion before trial.

S K L A R, Judge, concurring in part and dissenting in part:

¶20 I agree with the majority that Fernando Navarro-Figueroa is entitled to a probable-cause hearing on the serious-drug-offender sentence enhancement. Given the materially identical language in Rules 13.5(a) and (c), I see no choice but to apply *Chronis v. Steinle*, 220 Ariz. 559 (2009). But I disagree with the majority's conclusion that the probable-cause determination must occur before the trial's guilt phase. As long as it occurs before the aggravation phase, I would conclude that it complies with the rules. Because the trial court's order leaves open that possibility, I dissent in part.

¶21 My analysis begins with the timing of Navarro-Figueroa's motion for a probable-cause determination. A grand jury indicted him in November 2019, and the state filed the serious-drug-offender allegation in March 2023. But he did not move for a probable-cause determination until nearly two years later, in February 2025. By that point, trial was less than three months away.

¶22 Navarro-Figueroa was within his rights to make the motion at that time. As the majority points out, reading Rules 13.5 and 16.1 together demonstrates that Navarro-Figueroa was entitled to file his motion until twenty days before trial. He met this deadline.

¶23 But the timing was unusual. The rules generally envision probable-cause motions being filed much earlier. *See* Ariz. R. Crim. P. 5.1(a) (requiring preliminary hearings to commence within ten days of initial appearance if defendant is in custody or within twenty days if defendant is out of custody). The majority also identifies practical concerns that would typically result in such motions being filed earlier than in this case, even in the context of aggravating circumstances and sentence enhancements.

¶24 But for whatever reason—perhaps in part due to Navarro-Figueroa apparently being absent and thus not available for plea negotiations—the motion was filed later in the process here. Thus, by the time of the initial hearing on the motion, the court had only a month before trial. This left it with limited options for making a probable-cause determination while preserving the trial date. The court also seemed to

8

believe that a probable-cause hearing would take considerable time, noting that it "would essentially have to hear the bulk of the evidence in order to make a determination." It is not clear whether the court's calendar would have allowed it to do so before trial.

¶25 Given these circumstances, the trial court chose to defer its probable-cause determination. I disagree with the majority's conclusion that doing so was improper. In part, my disagreement stems from the majority's characterization of the court's decision. The court's words were:

> So at the conclusion of the State's evidence, in addition to whatever Rule 20 motions are made at that time, I will, at that time, address, under 13.5, the probable cause motion from the Defense. And if I don't find that there has been PC established, based on the evidence presented, then I'll, you know, make an appropriate ruling at that time.

The court later clarified, "[I]f I determine at the conclusion of the State's case that the allegation lacks probable cause, then it is not an allegation that will ever go to the jury for their consideration." From this language, the majority extrapolates that the court would determine probable cause for the sentence enhancement based solely on the state's evidence in its guilt-phase case-in-chief.

¶26 Had the trial court actually said it would do that, I agree that it would be error. Under Rule 19.1(c)(1), the sentence enhancement—a "noncapital sentencing allegation" that "must be found following a guilty verdict"—may not be referenced during the guilt phase unless the enhancement "is an element of the charged crime." Indeed, that portion of the trial "must proceed initially as though there were no . . . sentencing allegations." Ariz. R. Crim. P. 19.1(c)(1); *see also State v. Larin*, 233 Ariz. 202, ¶ 36 (App. 2013) (prohibiting "sentencing aggravator" from being referenced during guilt phase). This language requires a bifurcated trial with evidence concerning sentencing allegations presented at the aggravation phase. Ariz. R. Crim. P. 19.1(c)(2)(B). Thus, determining probable cause for a sentence enhancement based only on guilt-phase evidence would likely exclude relevant evidence from the probable-cause determination.

¶27 But that is not what the trial court said it would do. It simply said that the jury would not make any determination about the sentence

enhancement if probable cause was lacking.  But it said nothing about the process it would implement if it either believed probable cause existed or needed more information.  I do not believe we should infer from this scant record that the court was imposing a process in violation of Rule 19.1(c). *Cf. Barnes v. Bernini*, 245 Ariz. 185, ¶ 19 (App. 2018) (declining to infer from limited record that trial court allowed parties to deviate from Rule 19.1(c)-required bifurcation).

¶28        It is not entirely clear what the trial court was planning.  Perhaps it intended to combine the probable-cause determination with a decision on a Rule 20 motion at the aggravation phase.  If so, I do not believe doing so would be consistent with *Chronis*.  But the court had not yet done so, and it would be premature for this court to find such a violation.  Even if that was the court's plan, it had the opportunity to reconsider. Given this uncertainty, I am not entirely convinced that this court should accept jurisdiction.  We may be correcting a nonexistent error.

¶29        The trial court had at least one other option that was consistent with the language of its ruling — setting a probable-cause hearing after the trial's guilt phase, but before the aggravation phase.  If that were its approach, I see no legal error.  While Rule 16.1(b) requires a defendant to move for a probable-cause determination no later than twenty days before trial, it does not impose a deadline for holding the hearing.  It therefore provides the court with the flexibility necessary to hold a probable-cause hearing in the limited time available due to the twenty-day deadline of Rules 13.5 and 16.1.  Flexibility is especially appropriate because Rule 16.1 allows the court to modify the deadlines, including, presumably, to allow a probable-cause motion to be filed even closer to trial.  That flexibility should not necessitate a trial delay.

¶30        Setting a probable-cause hearing before the aggravation phase would also preserve the distinct nature of the probable-cause and guilt determinations, consistent with Rule 5.  And it would comply with Rule 19.1(c)'s bifurcation requirement by ensuring that evidence relevant to the sentence enhancement is excluded at the guilt phase.  The majority disagrees, concluding that Rule 19.1 does not "contemplate[] a probable cause hearing between the guilt phase and aggravation phase."  But it points to no language that precludes this procedure.

¶31        As a practical matter, the court would have valid reasons for deferring a probable-cause ruling, especially given the timing of Navarro-Figueroa's motion.  For example, it would have the benefit of considering evidence from the trial's guilt phase.  This is significant, as

much of the evidence concerning the serious-drug-offender allegation would likely also be relevant at the guilt phase. *See State v. Wassenaar*, 215 Ariz. 565, ¶ 28 (App. 2007) ("The trial court has 'broad discretion' regarding its management of the manner in which trial will be conducted, and has a duty to exercise that discretion." (quoting *State v. Cornell*, 179 Ariz. 314, 332 (1994))).

**¶32** Thus, deferring the ruling would avoid the trial court's stated concern about needing to hear "the bulk of the evidence" before trial to determine probable cause. On any additional issues, the court would benefit from the flexible procedures governing probable-cause hearings that would likely streamline the procedure further. *See* Ariz. R. Crim. P. 5.4(c) (allowing certain types of inadmissible evidence at probable-cause hearings); *see also Chronis*, 220 Ariz. 559, ¶ 19 (recognizing "focused nature of probable cause hearings and the prosecution's wide ability to offer different forms of evidence"). As long as the jurors were qualified for a sufficient number of days to cover both phases of trial, it also would not significantly inconvenience them. They would simply be excused for a day, or perhaps less, while the probable-cause hearing took place.

**¶33** Navarro-Figueroa points to other rules suggesting that probable-cause hearings must take place before the guilt phase begins. These include a twenty-five-day deadline for filing a motion under Rule 5.5 for review of a probable-cause determination. If that motion is granted, the new hearing must take place within fifteen days. Ariz. R. Crim. P. 5.5(d). It is not entirely clear to me that these deadlines apply in the context of a probable-cause determination for a sentence enhancement, as they deal with review of a "magistrate's determination to bind over a defendant." Ariz. R. Crim. P. 5.5(a). *Chronis* does not say that they apply in this context. 220 Ariz. 559, ¶ 18.

**¶34** If these deadlines do apply, it is difficult to see how they interrelate with the twenty-day deadline of Rules 13.5 and 16.1. To the extent the timing of Navarro-Figueroa's motion created scheduling challenges here, those challenges would be further heightened where defendants file probable-cause motions on the last day possible. The rules do not guide trial courts on how to navigate these challenges.

**¶35** In short, I am not convinced that the trial court erred in deferring its ruling on the probable-cause determination. While I am not certain we need to accept jurisdiction, to the extent we do, I would grant more limited relief than the majority. I would conclude only that

Navarro-Figueroa is entitled to a probable-cause determination on the sentencing enhancement before the trial's aggravation phase.