IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee/Cross-Appellant*,

*v.*

MICHAEL LEE RIEHLE, *Appellant/Cross-Appellee*.

No. 1 CA-CR 24-0648

FILED 02-12-2026

---

Appeal from the Superior Court in Mohave County
No.  CR-2024-00094
The Honorable Douglas Camacho, Judge

**CONVICTIONS AFFIRMED, SENTENCES VACATED AND
REMANDED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones, Joseph Newberg
*Counsel for Appellee/Cross-Appellant*

John Trebon, PC, Flagstaff
By John J. Trebon
*Counsel for Appellant/Cross-Appellee*

---

**OPINION**

Vice Chief Judge David D. Weinzweig delivered the opinion of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Cynthia J. Bailey joined.

---

**W E I N Z W E I G**, Vice Chief Judge:

**¶1** When a defendant is convicted of an offense that qualifies as "dangerous," he faces heightened penalties, including longer sentencing guidelines and a mandatory lifetime injunction against contact with the victim. Because of those heightened penalties, the Sixth Amendment generally requires that a jury—not the court—determine whether the offense qualifies as dangerous. But there's one exception to this constitutional directive: the court may designate an offense as dangerous as a matter of law if the elements of the charged offense are necessarily and always dangerous. No jury is required.

**¶2** We must determine who decides when disorderly conduct with a weapon is a dangerous offense—a jury or the judge. The State contends that disorderly conduct with a weapon is always dangerous and thus falls within the Sixth Amendment exception. We agree. The elements of disorderly conduct with a weapon are inherently dangerous. As a result, the Sixth Amendment does not require a jury to make that factual determination in each case.

**¶3** Michael Lee Riehle appeals his convictions and sentences for two counts of disorderly conduct with a weapon, possession of dangerous drugs and possession of drug paraphernalia. On cross-appeal, the State argues the superior court erred by requiring a jury to determine whether Riehle's disorderly conduct convictions were dangerous offenses. We affirm the convictions, but vacate and remand for the court to resentence Riehle.

## FACTS AND PROCEDURAL BACKGROUND

**¶4** We view and recount the facts in the light most favorable to sustaining the jury's verdicts.[1] On a Friday morning in October 2023, Riehle

---

[1] *State v. Nelson*, 214 Ariz. 196, 196, ¶ 2 (App. 2007).

threatened two victims with a rifle in separate incidents outside his home. The first incident occurred when a woman was parked outside Riehle's home, waiting for a friend. Riehle yelled at her and fired three shots in her direction. She fled unharmed and immediately called the police. Soon after, Riehle pointed his rifle at a second victim as he drove past Riehle's property. This victim also called the police.

¶5 Police arrested Riehle at the scene. Officers described him as "freaking out" and unintelligible. He said he fired at an intruder in self-defense, but a protective sweep of the home revealed no one inside. A later search of Riehle's home uncovered weapons and drug evidence. Officers recovered a rifle, a pistol, spent shell casings, ammunition and a zip lock bag containing a white crystal substance resembling methamphetamine. Next to the bag was a pen cap and burned aluminum foil covered in melted methamphetamine.

¶6 A three-day jury trial was held. The jury heard testimony from the police officer who collected the drug evidence and the crime scene analyst who tested it. Both identified the white crystal substance as methamphetamine based on their training and experience. The analyst also administered a Marquis test, which tested positive as amphetamine. The jury found Riehle guilty of two counts of disorderly conduct with a weapon, possession of dangerous drugs and possession of drug paraphernalia. *See* A.R.S. §§ 13-2904(A)(6), -3407 and -3415. The jury also found both victims suffered physical, emotional or financial harm. *See* A.R.S. § 13-701(D)(9).

¶7 Before sentencing, the superior court asked the parties whether Riehle's disorderly conduct convictions should be designated as dangerous offenses, subjecting him to a higher sentence and entitling the victims to lifetime injunctions. *See* A.R.S. §§ 13-105(13), -704 and -719(A)(1). Because the designation as dangerous would aggravate the legally prescribed range of allowable sentences, the court told the parties a jury would have to make that finding.

¶8 The State elected not to call a jury for this purpose and asked to proceed with sentencing. The superior court sentenced Riehle as a category one non-dangerous, non-repetitive offender. For the two disorderly conduct with weapons convictions—both class 6 felonies—the court imposed presumptive one-year prison terms, to run consecutively. For the possession of dangerous drugs conviction—a class 4 felony—the court imposed a mitigated one-year prison term, to run consecutively to the disorderly conduct sentences. For possession of drug paraphernalia—a

class 6 felony—the court imposed a four-month prison term, to run concurrently with the drug possession sentence.

¶9        Riehle timely appealed and the State timely cross-appealed. We have jurisdiction. A.R.S. §§ 12-120.21(A)(1), 13-4031, -4032(3) and -4033(A)(1).

## DISCUSSION

¶10        Four issues are raised on appeal. Riehle argues (1) the State did not adequately disclose the crime scene analyst or police officer as witnesses or describe their anticipated testimony, (2) the analyst's testimony was inadmissible, and (3) the jury heard insufficient evidence to support his convictions. On cross-appeal, the State argues the superior court should have designated the disorderly conduct with a weapon convictions as dangerous offenses without a jury finding. We address each issue in turn.

## I.        Expert Witness Disclosure.

¶11        Riehle first argues the State did not adequately disclose the law enforcement witnesses who identified the methamphetamine or their anticipated testimony. Riehle did not object below, so we review for fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

¶12        Court rules govern discovery and disclosure. *State v. Fish*, 259 Ariz. 27, 31, ¶ 9 (App. 2024). "There is no general constitutional right to discovery in a criminal case." *Id.* (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). Arizona Rule of Criminal Procedure 15.1(b) requires the State to disclose witness names and their anticipated testimony:

> the name and address of each person the State intends to call as a witness in the State's case-in-chief and any relevant written or recorded statement of the witness; [] any statement of the defendant and any co-defendant; [and] all existing original and supplemental reports prepared by a law enforcement agency in connection with the charged offense.

The purpose of Rule 15.1 is "to give full notification of each side's case-in-chief so as to avoid unnecessary delay and surprise at trial." *State v. Armstrong*, 208 Ariz. 345, 353, ¶ 38 (2004) (quoting *State v. Dodds*, 112 Ariz. 100, 102 (1975)).

¶13     We find no fundamental error.  Although the State did not strictly comply with Rule 15.1(b), Riehle cannot claim surprise or prejudice.  After all, the State named both witnesses in its initial disclosure statement and disclosed the crime scene analyst's report.  Under these circumstances, Riehle should not have been surprised when these witnesses were called to testify about their findings.  *State v. Towery*, 186 Ariz. 168, 186 (1996) ("[B]ecause Defendant had been given timely notice of the identity of the State's latent print and blood experts, he should not have been surprised when they were called to testify about their findings.").

## II.     Analyst's Expert Testimony.

¶14     Having resolved the disclosure issue, we turn to Riehle's challenge to the admissibility of the analyst's testimony.  Riehle argues the superior court should have excluded the crime scene analyst's testimony because the Marquis test was unreliable and the analyst was unqualified.  *See* Ariz. R. Evid. 702(a), (c).  Because Riehle objected below, we review the trial court's evidentiary ruling for an abuse of discretion.  *See State v. Blakley*, 204 Ariz. 429, 437, ¶ 34 (2003).  If we find error, we then determine whether it was harmless.  *See State v. Strong*, 258 Ariz. 184, 212, ¶ 129 (2024).

### A.     The Marquis Test.

¶15     Expert testimony must be based on reliable principles and methods.  Ariz. R. Evid. 702(c).  Arizona law evaluates reliability based on non-exclusive factors: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has faced peer review and publication; (3) whether the technique or theory is generally accepted within the relevant scientific community; (4) the known or potential rate of error of the technique or theory when applied; and (5) the existence and maintenance of standards controlling application of the technique.  *State ex rel. Montgomery v. Miller*, 234 Ariz. 289, 299, ¶ 24 (App. 2014) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593–94 (1993)).  Although the methodology of an expert witness must be based on more than speculation, it need not be reliable to a degree of scientific certainty.  *Id.* at 298, ¶ 23.

¶16     The superior court found the Marquis test to be sufficiently reliable.  Riehle points to research that Marquis tests are less reliable than confirmatory lab tests.  But cross-examination is the appropriate tool to attack "shaky but admissible [expert] evidence."  *Id.* at 298, ¶ 20 (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3rd Cir. 1999)).

¶17    The crime scene analyst acknowledged that false positives were possible, but rare.  He also shared his own extensive experience: he had performed the Marquis test and similar tests hundreds of times and never seen a positive Marquis test followed by a negative confirmatory lab test.  We find no abuse of discretion.

### B.    Expert Qualifications.

¶18    Riehle next argues the crime scene analyst was unqualified to identify the white crystal substance as methamphetamine.  We disagree.  A witness may qualify as an expert based on "knowledge, skill, experience, training, or education," and when his "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Ariz. R. Evid. 702.

¶19    The State laid enough foundation here to show the crime scene analyst was qualified.  The analyst testified he had worked in law enforcement for over 30 years and spent the last two years as a crime scene analyst.  He had taken several narcotic identification classes and participated in hundreds of investigations of methamphetamine-related offenses.  *See State v. Parkinson*, 258 Ariz. 601, 612–13, ¶ 42 (App. 2024) (holding that police officers may provide expert testimony based on their training and experience when foundation is provided).  He applied that training and experience to conclude the white, crystal substance was methamphetamine, stressing its visual similarity, the paraphernalia and the positive Marquis test.  *See id.*  The court did not abuse its discretion when it permitted the crime scene analyst to testify about his opinion.

## III.    Sufficient Evidence.

¶20    Riehle argues his convictions for disorderly conduct with a weapon, possession of drug paraphernalia and possession of dangerous drugs were unsupported by substantial evidence.  We review de novo whether the record had sufficient evidence for the jury to render its verdict, *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014), and will affirm if substantial evidence supports the jury's verdict, *State v. Hausner*, 230 Ariz. 60, 75, ¶ 50 (2012).  *See also* Ariz. R. Crim. P. 20(a)(1).  "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of [the] defendant's guilt beyond a reasonable doubt."  *State v. Spears*, 184 Ariz. 277, 290 (1996).

¶21    Riehle raises four distinct challenges to the sufficiency of the evidence, which we address in turn.

**¶22** First, Riehle argues his disorderly conduct conviction against the second victim was unsupported by reasonable evidence because that victim testified he was not disturbed "too much in reality." But the second victim also testified he was "scared" and clarified that his peace was disturbed. The jury heard substantial evidence to render its verdict.

**¶23** Second, Riehle argues the State did not prove he had the required mental state to disturb the first victim's peace. Not so. The jury could reasonably infer Riehle knew he was disturbing the first victim's peace by yelling, waving around a rifle and firing towards her car. *See State v. Noriega*, 187 Ariz. 282, 286 (App. 1996) (a defendant's mental state is rarely provable by direct evidence and a jury will usually have to infer it from his behaviors and the surrounding circumstances).

**¶24** Third, Riehle argues the aluminum foil cannot be considered drug paraphernalia because it was never tested. We disagree. The jury heard substantial evidence to find Riehle possessed the aluminum foil to consume a dangerous drug. Police found the aluminum foil next to the methamphetamine and a pen cap. The foil had burn marks and a melted white substance that resembled methamphetamine.

**¶25** Last, assuming we found the crime scene analyst's testimony inadmissible, Riehle claims the State did not present substantial evidence to prove the substance was methamphetamine. Because the testimony was admissible, there was substantial evidence to support the conviction. *Supra* ¶¶ 17, 19.

## IV. Dangerous Offense.

**¶26** On cross-appeal, the State argues a jury need never be asked to find that disorderly conduct with a weapon is a dangerous offense because it's always dangerous.

**¶27** The Sixth Amendment demands that a jury determine all facts that "increase the prescribed range of penalties to which a criminal defendant is exposed." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (adopting the concurrence in *Jones v. United States*, 526 U.S. 227, 252 (1999) (Stevens, J., concurring)). This fundamental rule preserves the "historic link between crime and punishment," and "historic role of the jury as an intermediary between the State and criminal defendants." *Alleyne v. United States*, 570 U.S. 99, 106, 114 (2013). But if a particular offense is always dangerous, a jury need not be called and the superior court can designate the offense as dangerous. *State v. Gatliff*, 209 Ariz. 362, 365–66, ¶¶ 17–18 (App. 2004).

¶28       Here, the dangerous-offense designation would have increased Riehle's sentencing exposure and altered his eligibility for probation. He was charged with and convicted of two counts of disorderly conduct with a weapon, A.R.S. § 13-2904(A)(6), which are class 6 felonies that carry a range of four months to two years, A.R.S. § 13-702(D), and are probation eligible. If these convictions were designated "dangerous offenses," A.R.S. § 13-105(13), the sentencing range would increase to between 18 months and three years in prison, A.R.S. § 13-704(A), and the offenses would not be probation eligible, A.R.S. § 13-704(G).

¶29       And so, to prevail here, the State must show the elements of disorderly conduct with a weapon are inherently dangerous. To determine whether an offense is inherently dangerous, Arizona courts compare the statutory elements of the offense to the statutory definition of dangerousness. *State v. Larin*, 233 Ariz. 202, 212–13, ¶ 38 (App. 2013); *Alleyne*, 570 U.S. at 107 ("The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense.").

¶30       Disorderly conduct with a weapon requires proof that the defendant with intent to disturb the peace of a neighborhood, family or person, or with knowledge of doing so:

> Recklessly handles, displays or discharges a deadly weapon
> or dangerous instrument.

A.R.S. § 13-2904(A)(6).

¶31       A dangerous offense is defined as:

> [A]n offense involving the discharge, use or threatening
> exhibition of a deadly weapon or dangerous instrument.

A.R.S. § 13-105(13).

¶32       The State argues that disorderly conduct with a deadly weapon is always a dangerous offense because one who "recklessly handles, displays or discharges a deadly weapon" to disturb the peace has either "discharge[d], use[d] or threatening[ly] exhibit[ed]" that weapon to accomplish their unlawful purpose. Riehle counters that disorderly conduct with a deadly weapon might not be dangerous because one who "recklessly handles" a deadly weapon to disturb the peace does not "use" that weapon.

¶33 Both parties agree the word "use" means to employ something to accomplish a purpose. And we agree. *See also Voisine v. United States*, 579 U.S. 686, 692 (2016) ("Dictionaries consistently define the noun 'use' to mean the 'act of employing' something.") (citing three dictionaries).

¶34 Applied here, a defendant who recklessly handles a weapon to disturb the peace "employs" that weapon "to accomplish his unlawful purpose." The U.S. Supreme Court defined the word "use" as being "indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct." *Id.* at 693. A defendant who recklessly handles a weapon to disturb the peace acts volitionally. He deliberately employs the weapon—even if he handles it carelessly—to achieve his purpose.

¶35 To be clear, this definition of "use" does not encompass mere possession of a weapon. To be dangerous, the defendant must employ the weapon to accomplish the criminal offense. *See* A.R.S. § 13-105(13) ("'Dangerous offense' means *an offense involving* the discharge, use or threatening exhibition of a deadly weapon.") (emphasis added). A defendant who possesses a weapon while committing an unrelated crime has not "used" the weapon within the statute's meaning. For example, a defendant who possesses a weapon at home while filing false tax returns has not "used" the weapon to commit tax fraud—the weapon played no role in accomplishing the crime. But a defendant who recklessly handles, displays or discharges a weapon to disturb the peace has employed that weapon as his instrument to achieve his unlawful purpose.

¶36 Thus, the superior court erred by not designating disorderly conduct with a weapon a dangerous offense. We vacate Riehle's sentences and remand so that the court may sentence Riehle under the appropriate scheme.

## CONCLUSION

¶37 We affirm Riehle's convictions but vacate his sentences and remand for resentencing.